THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKY E. VELEZ, Defendant-Appellant.

Second District   No. 2—01—0762

Opinion filed January 27, 2003.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BYRNE delivered the opinion of the court:

Following a stipulated bench trial, defendant, Ricky E. Velez, was found guilty of resisting a police officer (720 ILCS 5/31—1(a) (West 2000)) and unlawful use of weapons (UUW) (720 ILCS 5/24—1(a)(1) (West 2000)). The trial court imposed concurrent sentences of one year of conditional discharge for each conviction. The written sentencing order further stated, "restitution paid to SAO W/I 60 days of demand." On appeal, defendant raises only two issues: (1) whether his

possession of a malfunctioning switchblade knife supports his UUW conviction and (2) whether the trial court's restitution order is enforceable. We affirm the convictions, but we reverse the portion of the sentence ordering defendant to pay restitution.

## FACTS

On February 24, 2000, the State filed a three-count complaint charging defendant with (1) crossing a roadway at any point other than within a marked crosswalk (625 ILCS 5/11—1003(a) (West 2000)); (2) resisting a police officer; and (3) "unlawful use of a weapon 'possession of a switchblade' " in that defendant "knowingly possessed a knife commonly referred to as a 'switchblade' which has a blade that opens automatically by hand pressure applied to a button."

Defendant filed a motion to quash the arrest and suppress evidence. At the hearing on the motion, Aurora police officer Shawn McCleary testified that, on February 22, 2000, he was patrolling a residential area when he noticed "two kids" walking in the area. At 4:58 p.m., McCleary was writing a ticket for an illegally parked car when "an unknown individual" approached and stated that he thought he had seen two men with an open can of beer. The person did not describe the two men or identify them by name, but he pointed in the direction where McCleary had previously noticed the two young men walking. McCleary had not noticed any open alcohol when he passed the two individuals before his discussion with the tipster.

Based on the tip, McCleary drove his squad car in search of the suspected offenders. Five to six minutes later, McCleary approached a park and encountered the two individuals he had seen before, one of whom was defendant. The officer did not see the individuals carry alcohol or throw anything as he approached, but he saw them cross the street without using a crosswalk. When McCleary asked to speak with them, the individuals initially walked away in opposite directions but returned to McCleary when he exited the squad car. McCleary told defendant and his companion that he was detaining them based on the tip. When the officer asked the two for identification, defendant produced a school identification card that showed no date of birth. McCleary saw a state identification card in defendant's wallet and asked him to remove it. Defendant initially protested but then produced the card, which indicated that he was 21 years old. The other individual stated that he was 14 years old and had no identification.

At McCleary's direction, defendant and the juvenile placed their hands on the squad car and submitted to a pat-down search, which disclosed nothing. McCleary then stated that he would issue them citations because he saw them cross the street at a point outside of a

crosswalk. McCleary testified that he could not recall whether the street had marked crosswalks. McCleary told defendant that he was required to post bond by paying $75 or surrendering a valid driver's license. Defendant stated that he had neither and walked away.

McCleary attempted to arrest defendant, but he pulled away and refused to be handcuffed. McCleary performed a "leg sweep" to subdue defendant, and the officer's pants were ripped twice during the struggle. McCleary handcuffed defendant, and a second search disclosed a switchblade knife in a rear pocket of defendant's pants. The knife did not function properly, but defendant was "extremely belligerent and hostile" during the encounter. After the arrest, McCleary searched the area for evidence of alcohol consumption, but he found nothing. McCleary handcuffed the juvenile and transported both suspects to the police station.

The court denied defendant's motion to quash the arrest and suppress evidence, noting that an arrest need not be valid for a person to be criminally liable for resisting the arrest. The court admitted the knife as the fruit of the search incident to a lawful arrest for resisting a police officer. Defense counsel requested a stipulated bench trial and defendant signed a jury waiver form. The parties stipulated to McCleary's testimony and the relevant police reports, and the attorneys argued the case.

Defense counsel asserted that defendant did not violate the street-crossing statute because there was no evidence that he had failed to yield to any vehicle. Counsel did not address the charge of resisting a police officer, but she contended that defendant could not be guilty of UUW because McCleary admitted that the switchblade knife did not have "a blade that opens automatically when pressure is applied to a button."

The trial court found defendant not guilty of crossing a roadway outside of a crosswalk and conceded that defendant's knife was broken at the time of the arrest. Nevertheless, the court found defendant guilty of resisting a police officer and UUW. The court concluded that the statute prohibiting the possession of switchblade knives applies equally to functioning and malfunctioning knives.

The prosecutor argued that defendant should pay restitution to the City of Aurora for the damage to McCleary's pants. The court inquired whether the officer personally paid for the pants, and McCleary stated "I never submitted a bill to the city for that." In the sentencing order, the court wrote "restitution paid to SAO W/I 60 days of demand." The court never heard evidence of the value of the damaged pants or defendant's ability to pay for them. Defendant's posttrial motion was denied, and this timely appeal followed.

## ANALYSIS

■ Defendant initially contends that he was not proved guilty beyond a reasonable doubt of UUW. When a defendant challenges the sufficiency of the evidence, a reviewing court will reverse the conviction only if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541 (1999).

■ A person commits unlawful use of weapons when he knowingly "[s]ells, manufactures, purchases, possesses, or carries any \*\*\* knife, commonly referred to as a switchblade knife, which has *a blade that opens automatically* by hand pressure applied to a button, spring, or other device in the handle of the knife." (Emphasis added.) 720 ILCS 5/24—1(a)(1) (West 2000). It is undisputed that defendant's knife had a blade that was *designed* to open automatically when a button on the handle was pressed. However, the knife could not operate as designed because the blade did not open when the button was pressed. Because the knife was inoperable, defendant contends that it was not a "switchblade" under section 24—1(a)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/24—1(a)(1) (West 2000)). The interpretation of the term "switchblade" in section 24—1(a)(1) is a question of statutory construction that is subject to *de novo* review. See *People v. Lamborn*, 185 Ill. 2d 585, 590 (1999).

This case is similar to *People v. Martinez*, 285 Ill. App. 3d 881 (1996), in which the defendant was convicted of UUW for possessing a stun gun pursuant to section 24—1(a)(4) of the Code (720 ILCS 5/24—1(a)(4) (West 2000)). The stun gun had a crack in the casing near the antennae which rendered the gun incapable of producing an electrical current. *Martinez*, 285 Ill. App. 3d at 882-83. A device is a "stun gun" under the UUW statute if it *"can send* out a current capable of disrupting the person's nervous system in such a manner as to render him incapable of normal functioning." (Emphasis added.) 720 ILCS 5/24—1(a)(10) (West 2000).

The defendant argued that the statutory phrase "can send" required the State to prove the stun gun's present functionality. The Appellate Court, First District, rejected the defendant's argument, holding that the phrase "can send" was descriptive of the device's design and intended function rather than its present ability to send an incapacitating charge. *Martinez*, 285 Ill. App. 3d at 884. The court noted that "[a] stun gun, like any other tool or device, is not changed in character merely because of its present inability to perform." *Martinez*, 285 Ill. App. 3d at 884. The court affirmed the UUW conviction because the inoperable device met the statutory definition of "stun gun."

■ Here, the parties agree that defendant possessed a device that was designed and intended to operate as a switchblade knife. Like the stun gun in *Martinez*, the character of the knife in this case did not change merely because it did not operate properly. Officer McCleary testified that the knife's appearance suggested that it would function normally at the time he seized it from defendant's pocket, and defendant concedes that the UUW statute reflects "a strong public policy to dissuade persons from carrying and brandishing weapons or any 'objects' which have *the appearance or characteristics*" of a firearm or deadly weapon. (Emphasis added.) *People v. Halley*, 131 Ill. App. 2d 1070, 1073 (1971). Therefore, in agreement with *Martinez*, we hold that a defendant may be found guilty of UUW if he possesses a malfunctioning or inoperable switchblade knife. After viewing the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of UUW beyond a reasonable doubt. See *Smith*, 185 Ill. 2d at 541.

Defendant cites several cases in which the defendants argued that they were not guilty of possessing a gun under the UUW statute because the weapons were "broken down in a non-functioning state." Exemptions from criminal liability for UUW exist for "weapons that are broken down in a non-functioning state or are not immediately accessible." 720 ILCS 5/24—2(b)(4) (West 2000). The defendant bears the burden of proving by a preponderance of the evidence his entitlement to the exemption. 720 ILCS 5/24—2(h) (West 2000). However, the section 24—2(b)(4) exemption governs only those defendants charged with UUW under section 24—1(a)(4) or section 24—1(a)(10) of the Code, and defendant concedes that the exemption does not apply here. Furthermore, a weapon is "broken down in a non-functioning state" under the exemption only if it is disassembled rather than accidentally broken. *Martinez*, 285 Ill. App. 3d at 885. Therefore, even if the exemption governed switchblade knives, we would conclude that defendant's knife was not broken down in a nonfunctioning state. However, we acknowledge that a device may be in such a decrepit state that it ceases to qualify as a switchblade knife under section 24—1(a)(1), and such a determination is a question for the trier of fact.

●4 Defendant next challenges the portion of the judgment which states "restitution paid to SAO W/I 60 days of demand." Contrary to defendant's assertion, the written order is not inconsistent with the trial judge's oral comments at the sentencing hearing. See *People v. Allen*, 109 Ill. 2d 177, 184 (1985) ("when there is a conflict between the common law record and the report of proceedings[,] the court should resolve the conflict by looking at the record as a whole").

Our review of the record reveals that the court intended for the Du Page County State's Attorney's office to ascertain the value of Officer McCleary's damaged pants and then demand defendant to pay that amount. It is unclear whether the City of Aurora or McCleary was to ultimately receive the funds, but McCleary suggested at the hearing that the city would reimburse him for his loss if he submitted a request.

Defendant argues that the restitution order is invalid because it does not fix an amount to be paid. When ordering restitution, a trial court must set forth in the sentencing order a definite amount that the defendant must pay. 730 ILCS 5/5—5—6(b) (West 2000). If the court does not specify a definite amount, the cause ordinarily will be remanded for the court to amend the sentencing order to reflect the amount due. *People v. Otten*, 228 Ill. App. 3d 305, 312 (1992).

However, a police department or government agency is not considered a "victim" within the meaning of the restitution statute because an expenditure directed to solving crimes is part of the investigatory agency's normal operating costs. Therefore, a restitution order should be reversed if it is intended to compensate the agency for these expenses. *People v. Derengoski*, 247 Ill. App. 3d 751, 754-55 (1993). Under the circumstances of this case, McCleary's loss qualifies as a reasonably expected law enforcement expense and it appears that McCleary could seek reimbursement from the city. Therefore, we reverse the portion of the judgment that orders defendant to pay an indeterminate amount of restitution. See *Derengoski*, 247 Ill. App. 3d at 755.

Finally, we note that appellate counsel has failed to raise the issue of the legitimacy of Officer McCleary's conduct at the time of the arrest, and we decline to address this or any other issue *sua sponte*. The portion of the judgment ordering restitution is reversed, and the remainder of the judgment is affirmed.

Affirmed in part and reversed in part.

HUTCHINSON, P.J., and GROMETER, J., concur.