(No. 97452.— 
)

*In re* DETENTION OF HAROLD POWELL (The People of the State of Illinois, Appellant, v. Harold Powell, Appellee).

*Opinion filed September 22, 2005.—Rehearing denied November 28, 2005.*

124

Lisa Madigan, Attorney General, of Springfield (Gary S. Feinerman, Solicitor General, and Linda D. Woloshin and Jay Paul Hoffmann, Assistant Attorneys General, of Chicago, of counsel), for the People.

Daniel P. Duffy, of Duffy & Mundo, P.C., of Chicago, and E. Hardy Lewis, of Blanchard, Jenkins, Miller, Lewis & Styers, P.A., of Raleigh, North Carolina, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

In 1987, respondent Harold Powell was convicted of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14) and aggravated kidnapping (Ill. Rev. Stat. 1987, ch. 38, par. 10—2), and was sentenced to life in prison. The sentence was vacated on appeal, and respondent was resentenced to concurrent terms of 30 years for aggravated criminal sexual assault and 15 years for aggravated kidnapping. On September 25, 2000, the State filed a petition in the circuit court of Cook County asking that respondent be committed pursuant to the Sexually Violent Persons Commitment Act (the Act or Commitment Act) (725 ILCS 207/1 *et seq.* (West 2000)). Respondent filed a motion to dismiss the petition as untimely, alleging that the petition was filed more than 90 days before his entry into mandatory supervised release, in violation of section 15(b—5)(1) of the Commitment Act (725 ILCS 207/15(b—5)(1) (West 2000)). The circuit court denied respondent's motion to dismiss.

Respondent moved for leave to file an interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). The circuit court granted respondent's motion and certified the following question for appeal: "[W]hether the State's original Petition was untimely

filed where it was not filed within 30 [*sic*] days of the respondent's release onto mandatory supervised release, or within 90 [*sic*] days after said release, as required by 725 ILCS 207/15(b—5)(1)."[1] The appellate court answered the certified question in the affirmative, concluding that the State's petition was untimely filed. 344 Ill. App. 3d 97. The State appeals from the judgment of the appellate court (177 Ill. 2d R. 315). For the reasons that follow, we reverse the judgment of the appellate court.

## BACKGROUND

In 1987, respondent was convicted of three counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, pars. 12—14(a)(1), (a)(3), (a)(4)) and two counts of aggravated kidnapping (Ill. Rev. Stat. 1987, ch. 38, pars. 10—2(a)(3), (a)(5)), and was sentenced to life in prison. The convictions stemmed from an incident that occurred on October 28, 1985. In 1991, respondent's life sentence was vacated on appeal, and he was resentenced to consecutive terms of 30 years in prison for aggravated criminal sexual assault and 15 years for aggravated kidnapping. In 1993, following an appellate court order, respondent's sentences were changed from consecutive to concurrent.

Respondent was scheduled to be released into mandatory supervised release (MSR) from the Illinois Department of Corrections' Big Muddy River Correctional Center on September 30, 2000. On September 25, 2000, the State, in conjunction with the Cook County State's Attorney, filed a petition in the circuit court of Cook

---

[1]As was noted by the appellate court, the certified question, as posed in the circuit court's order, misstates section 15(b—5)(1), which requires that the petition be filed "[n]o more than *90 days before* discharge or entry into mandatory supervised release *** and no more than *30 days after* the person's entry into parole or mandatory supervised release." (Emphases added.) 725 ILCS 207/ 15(b—5)(1) (West 2000).

County pursuant to section 15 of the Commitment Act (725 ILCS 207/15 (West 2000)). This petition alleged that respondent was a "sexually violent person" within the meaning of section 5(f) of the Act (725 ILCS 207/5(f) (West 2000)) and, therefore, subject to commitment to the custody of the Department of Human Services "until such time [as] he is no longer a sexually violent person." In support of this petition, the State alleged that in 1987 respondent was convicted in Illinois of aggravated criminal sexual assault, a "sexually violent offense." The petition also alleged that respondent was twice convicted of rape in Tennessee, once in 1963 and again in 1974. The petition further alleged that respondent suffered from several mental disorders, including "Paraphilia, Not Otherwise Specified, With Non-consenting Persons." According to the petition, respondent "is dangerous to others because his mental disorders create a substantial probability that he will engage in acts of sexual violence."

After reviewing the petition, the circuit court determined that there was cause to believe that respondent was eligible for commitment under section 35(f) of the Act (725 ILCS 207/35(f) (West 2000)). The court issued an order directing the Department of Corrections to detain respondent and transfer him to a detention facility in the Department of Human Services. The court's order also set the matter for a hearing to determine whether there was probable cause to believe that respondent was a sexually violent person. 725 ILCS 207/30(b) (West 2000). On September 26, 2000, respondent was served with a copy of the State's petition and a copy of the circuit court's detention order.

On September 28, 2000, respondent, who was still being held at the Department of Corrections' Big Muddy River Correctional Center, was given a copy of the conditions under which his MSR was to be served. As noted, respondent was scheduled to be released into MSR on

September 30. Under section 3—3—7(c) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/3—3—7(c) (West 2000)), respondent was to sign the statement of MSR conditions "before release." However, he refused to sign. According to respondent's testimony, he declined to sign the MSR agreement because he wanted to serve his MSR in Tennessee rather than Illinois. Respondent testified that his mother lived in Tennessee and he wanted to move in with her when he was released.

As a result of respondent's refusal to sign the MSR document, respondent was charged with an MSR violation. The violation report recommended that respondent "remain in an Illinois Correctional facility for the duration of his MSR period." The Prisoner Review Board scheduled several hearings on the alleged violation, but was unable to secure respondent's signature. According to an affidavit of Charles Soper, a corrections counselor at the Big Muddy River Correctional Center, Soper met with respondent 10 to 12 times between September 29, 2000, and March 12, 2001, in an effort to obtain respondent's signature. Soper testified in his affidavit that, on each of these occasions, respondent refused to sign the MSR agreement. Soper added that, during at least one of these meetings, respondent told Soper that he refused to sign the MSR agreement because he wanted to avoid being committed under the Act. During this period from September 2000 to March 2001, respondent remained in custody at the Department of Corrections' Big Muddy River Correctional Center.

In October 2000, following the probable cause hearing previously ordered by the circuit court pursuant to the Commitment Act (725 ILCS 207/30(b) (West 2000)), the court entered an order finding that there was probable cause to believe that respondent was a sexually violent person subject to commitment under section 30(c)

of the Act (725 ILCS 207/30(c) (West 2000)). The court ordered respondent detained pending further order of the court, and directed the Department of Human Services to evaluate respondent.

On March 14, 2001, respondent signed the statement of conditions under which his MSR was to be served. The next day he was transferred from the Big Muddy River Correctional Center to a Department of Human Services treatment and detention facility, where he was held pursuant to the circuit court's October 2000 detention order. According to respondent, he agreed to sign on March 14 because, five days previously, his blood pressure medication had been discontinued by the medical staff at the Big Muddy River Correctional Center.

On April 18, 2001, respondent filed a motion in the circuit court to dismiss the State's commitment petition. Respondent argued that the State's petition was not filed within the 120-day window required by section 15(b— 5)(1) of the Commitment Act. Under this provision, a sexually violent person petition must be filed "[n]o more than 90 days before discharge or entry into mandatory supervised release from a Department of Corrections correctional facility *** and no more than 30 days after the person's entry into parole or mandatory supervised release." 725 ILCS 207/15(b—5)(1) (West 2000). According to respondent, he did not enter MSR until March 14, 2001, the date he signed the MSR agreement. Respondent therefore contended that, in order for the State's petition to be timely, it must have been filed either within 90 days before March 14, 2001, or within 30 days after that date. However, respondent noted that the State's petition was filed on September 25, 2000, which was "171 days before March 14, 2001." In respondent's view, the State's petition was untimely filed. Respondent asked the circuit court to dismiss the petition with prejudice and to order respondent's immediate release from custody.

The State argued that respondent's MSR period began on the scheduled date, September 30, 2000, rather than on March 14, 2001, the date that respondent signed the document specifying the conditions of his MSR. The State contended that the signing of the MSR agreement had no impact on when an inmate enters into MSR. According to the State, an inmate's MSR entry date is established "by operation of law" when the Department of Corrections, at the time of sentencing, determines an inmate's scheduled date of entry into MSR. The State therefore argued that its commitment petition, which was filed on September 25, 2000, was timely filed within 90 days before respondent's September 30 entry into MSR, as required by section 15(b—5)(1) of the Act (725 ILCS 207/15(b—5)(1) (West 2000)).

On November 6, 2001, the circuit court held a hearing on respondent's motion to dismiss the State's petition. Following argument on the motion, the judge stated:

"[M]y initial reaction in reading the statute [section 15(b—5)(1) of the Act] is that the statute did not contemplate an inmate's refusal to accept mandatory supervised release.

I don't see anything in the statute where it contemplates it."

The judge added that, in his view, if section 15(b—5)(1) were construed as respondent urged, this would give an inmate a measure of control over when the State could file a sexually violent person petition. The judge stated: "[I]t's the court's thinking that a respondent or an inmate cannot dictate when a petition would be filed."

On November 20, 2001, the circuit court denied respondent's motion to dismiss the State's petition. The court stopped short of ruling, as the State had urged, that an inmate's MSR period began, by operation of law, on the date determined by the Department of Corrections at the time of sentencing. Instead, the circuit court held more narrowly that, in filing a petition under the

Act, the State had the right to rely on the anticipated date of entry into MSR. Under the circuit court's ruling, the State's petition in the case at bar was timely filed within 90 days of respondent's anticipated date of entry into MSR.

Respondent moved for leave to file an interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). The circuit court granted the motion, certifying for appeal the following question: "[W]hether the State's original Petition was untimely filed where it was not filed within 30 [sic] days of the respondent's release onto mandatory supervised release, or within 90 [sic] days after said release, as required by 725 ILCS 207/15(b—5)(1)."

The appellate court answered the certified question in the affirmative and reversed the ruling of the circuit court. 344 Ill. App. 3d 97. The appellate court held that the filing requirements of section 15(b—5)(1) were mandatory rather than directory, and that a petition under the Act therefore must be filed "no more than 90 days prior to an inmate's 'actual' entry into MSR rather than [his] 'anticipated' entry" into MSR. 344 Ill. App. 3d at 105. According to the appellate court, the filing requirements of section 15(b—5)(1) were designed by the legislature to protect an inmate's "liberty interest *** in release from prison." 344 Ill. App. 3d at 104. Given this purpose for the filing requirements, the appellate court concluded that they were not "mere technicalities" with only directory effect. Rather, they were "procedural safeguards" that must be seen as mandatory. Under the appellate court's construction of section 15(b—5)(1), the State's petition was untimely because it was filed more than 90 days before respondent's "actual" entry into MSR on March 14, 2001, and was "not refiled within 30 days of the respondent's entry into MSR." 344 Ill. App. 3d at 105. The appellate court remanded the cause to the

circuit court. We granted the State's petition for leave to appeal under our Rule 315 (177 Ill. 2d R. 315).

## ANALYSIS

### I. Respondent's Motion to Strike

Initially, we address respondent's motion to strike, which was taken with the case. In his motion, respondent argues that portions of the statement of facts included in the State's appellate brief should be stricken because they fail to comply with Supreme Court Rule 341(e)(6) (188 Ill. 2d R. 341(e)(6)). Rule 341(e)(6) provides that the statement of facts in the appellant's brief "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." 188 Ill. 2d R. 341(e)(6). Respondent contends that portions of the statement of facts included in the State's brief are: (1) irrelevant and unfairly prejudicial; (2) unsupported by the record or based on portions of the record that may not have been introduced into evidence; (3) argumentative; and/or (4) improperly phrased.

"[T]he striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review." *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031, 1035 (2000); accord *People v. Flanagan*, 201 Ill. App. 3d 1071, 1075 (1990). In the case at bar, the statement of facts included in the State's brief substantially complies with Rule 341(e)(6), and it neither hinders nor precludes our review. Respondent's motion to strike is therefore denied.

### II. The Sexually Violent Persons Commitment Act

Before we begin our analysis of section 15(b—5)(1), we provide, as background, a brief overview of the Sexually Violent Persons Commitment Act as a whole. The Commitment Act, which went into effect on January 1, 1998 (Pub. Act 90—40, eff. January 1, 1998), applies to

an individual who has been convicted of a "sexually violent offense" and who is nearing release or discharge from custody. *In re Detention of Lieberman*, 201 Ill. 2d 300, 309 (2002); 725 ILCS 207/10(b) (West 2000). If such an individual "may meet the criteria for commitment as a sexually violent person," the Act allows the State to petition the court for the civil detention of this person beyond his imposed period of incarceration. *Lieberman*, 201 Ill. 2d at 309; 725 ILCS 207/10(b), 15 (West 2000). A "sexually violent person," as defined in the Act, is one "who has been convicted of a sexually violent offense *** and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." 725 ILCS 207/5(f) (West 2000).

Upon the filing of the petition, the court must determine whether to order the detention of the person who is the subject of the petition. Such detention is ordered only if there is cause to believe that the person is eligible for commitment as a sexually violent person. If the person is ordered detained, he is held in a facility approved by the Department of Human Services. 725 ILCS 207/30(a) (West 2000). The court also is required to conduct a hearing to determine if there is probable cause to believe that the person named in the petition is a sexually violent person. 725 ILCS 207/30(b) (West 2000). If probable cause is not established, the petition must be dismissed. If probable cause is shown and if the person is not already in custody, the court must order the person taken into custody pending trial. 725 ILCS 207/30(c) (West 2000); *In re Detention of Samuelson*, 189 Ill. 2d 548, 554 (2000).

Under section 35 of the Act, a trial to determine whether the person named in the petition is a sexually violent person must begin no later than 45 days after the date of the probable cause hearing. However, "[t]he court

may grant a continuance of the trial date for good cause upon its own motion, the motion of any party or the stipulation of the parties, provided that any continuance granted shall be subject to Section 103—5 of the Code of Criminal Procedure of 1963 [725 ILCS 5/103—5 (West 2000)]." 725 ILCS 207/35(a) (West 2000). Section 103—5 of the Code of Criminal Procedure is known as the speedy-trial statute. If it is not shown at trial that the person named in the petition is a sexually violent person, "the court shall dismiss the petition and direct that the person be released unless he or she is under some other lawful restriction." 725 ILCS 207/35(f) (West 2000). If, on the other hand, it is determined that the person named in the petition is a sexually violent person, "the court shall order the person to be committed to the custody of the Department [of Human Services] for control, care and treatment until such time as the person is no longer a sexually violent person." 725 ILCS 207/40(a) (West 2000).

III. Section 15(b—5)(1) of the Commitment Act

Section 15 of the Act governs the filing of a sexually violent person petition. Section 15(b—5)(1), the provision at issue in this appeal, specifies time limits for the filing of the petition. Section 15(b—5)(1) provides:

"The petition must be filed:

(1) No more than 90 days before discharge or entry into mandatory supervised release from a Department of Corrections correctional facility for a sentence that was imposed upon a conviction for a sexually violent offense ***, and no more than 30 days after the person's entry into parole or mandatory supervised release[.]" 725 ILCS 207/15(b—5)(1) (West 2000).

The main question in this appeal is whether, under section 15(b—5)(1), a sexually violent person petition is timely only if it is filed within 90 days before an inmate's *actual entry* into MSR, or whether, in some circumstances, a petition would be timely if it were filed within

90 days before the inmate's *anticipated entry* into MSR. The issue before us is a matter of statutory construction, and our review is therefore *de novo*. *Lieberman*, 201 Ill. 2d at 307.

The primary goal of statutory construction is to ascertain and give effect to the intent of the legislature. *Lieberman*, 201 Ill. 2d at 307; *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). All other rules of statutory construction are subordinate to this cardinal principle. *Lieberman*, 201 Ill. 2d at 307; *People v. Hanna*, 207 Ill. 2d 486, 497 (2003); *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). The most reliable indicator of legislative intent is the language of the statute, which is to be given its plain, ordinary and popularly understood meaning. *In re D.F.*, 208 Ill. 2d 223, 229 (2003); *Lieberman*, 201 Ill. 2d at 308; *Michigan Avenue National Bank*, 191 Ill. 2d at 504. Where the language of a statute is clear and unambiguous, courts may not resort to aids of statutory construction. *People v. Richardson*, 196 Ill. 2d 225, 228 (2001). However, if the statutory language is ambiguous, a court may consider other interpretive aids such as legislative history to resolve the ambiguity and determine legislative intent. *People v. Maggette*, 195 Ill. 2d 336, 348 (2001). In construing a statute, we presume that the legislature, in enacting the statute, did not intend absurdity, inconvenience, or injustice. *Michigan Avenue National Bank*, 191 Ill. 2d at 504; *Sylvester*, 197 Ill. 2d at 232.

In the matter at bar, the State contends that the appellate court erred in holding that a sexually violent person petition must be filed within 90 days before an inmate's *actual* entry into MSR rather than within 90 days before an inmate's *anticipated* date of entry into MSR. The State advances two arguments in support of its position that, under section 15(b—5)(1) of the Act, a petition is timely if it is filed within 90 days before the

anticipated, rather than the actual or physical, entry into MSR. First, the State asserts, as it did in the courts below, that an inmate's MSR period begins, by operation of law, on the date scheduled by the Department of Corrections at the time of sentencing. According to the State, the signing of the MSR agreement has no impact on an inmate's entry into MSR. "Consequently," the State contends, "respondent's refusal [in the case at bar] to sign the MSR agreement could not prevent his MSR from actually starting on the scheduled date." Under this view, respondent entered into MSR on his scheduled date of September 30, 2000, and the State's commitment petition therefore was timely filed five days before that date. The State argues in the alternative that, in filing a petition under the Act, the State has the right to rely on the inmate's anticipated date of entry into MSR. This position is the same as that taken by the circuit court in the case at bar. As noted, it was on this narrower ground that the circuit court denied respondent's motion to dismiss the State's petition as untimely.

Respondent counters that, under the plain language of section 15(b—5)(1), "entry into mandatory supervised release" refers to an inmate's actual, or physical, release from incarceration into MSR, rather than the inmate's anticipated entry into MSR. Applying this argument to the case at bar, respondent notes that it was not until March 15, 2001, the day after he signed his statement of MSR conditions, that he was physically released from the Big Muddy River Correctional Center and transferred into the custody of the Department of Human Services. Respondent contends that this was the earliest date that he could have entered into MSR within the meaning of section 15(b—5)(1), and the State's petition therefore was untimely under that provision. In support of this position, respondent asserts, as did the appellate court, that the timing requirements of section 15(b—5)(1) were

designed by the legislature to protect an inmate's liberty interest in release, and these timing requirements therefore must be "strictly observed." For the reasons set forth below, we disagree with respondent's interpretation of section 15(b—5)(1) of the Act.

In the hearing on respondent's motion to dismiss the State's petition, the circuit court judge stated that, in his view, section 15(b—5)(1) "did not contemplate an inmate's refusal to accept mandatory release." We agree. No mention is made of this scenario in section 15(b—5)(1) of the Act, nor is it mentioned in section 3—3—7(c) of the Code of Corrections (730 ILCS 5/3—3—7(c) (West 2000)), the provision which states that an inmate must sign his statement of MSR conditions "before release." Given this lack of statutory guidance regarding situations where the inmate refuses to sign his statement of MSR conditions, it is unclear whether, in such circumstances, the term "entry into mandatory supervised release," as used in section 15(b—5)(1), refers to the inmate's actual entry into MSR or, instead, his anticipated entry into MSR. In resolving this issue, we look to the legislature's intent in adopting the Sexually Violent Persons Commitment Act as a whole. "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole." *Michigan Avenue National Bank*, 191 Ill. 2d at 504; see also *Maggette*, 195 Ill. 2d at 348 (observing that "[a] court must consider the entire statute and interpret each of its relevant parts together").

The General Assembly's purpose in adopting the Commitment Act is clearly expressed in the legislative debates regarding Senate Bill 6, which ultimately was enacted as the Commitment Act (Pub. Act 90—40, eff. January 1, 1998). Representative Dart, the House sponsor of Senate Bill 6, explained that the intent of the General Assembly in passing this legislation was to "keep

our streets in our community safe from individuals[ ] who pose an ongoing threat to our children and to adults, as well. This is an attempt to reach out and to ensure that these people, who we know are predators, who are going to prey on our children and on adults in our community, frankly, are not going to be out there and that we are going to ensure that our streets are more safe." 90th Ill. Gen. Assem., House Proceedings, May 15, 1997, at 167 (statements of Representative Dart). Similarly, the Senate sponsor of Senate Bill 6, Senator Radogno, stated that the legislation was an attempt "to address the fact that many sexually violent persons are extremely difficult to rehabilitate and tend to be repeat offenders." 90th Ill. Gen. Assem., Senate Proceedings, March 18, 1997, at 30 (statements of Senator Radogno). According to Senator Radogno, the legislature intended that the Commitment Act would "allow for the civil commitment at the conclusion of a criminal sentence of persons determined by a court to be in continuing danger of committing sex crimes." 90th Ill. Gen. Assem., Senate Proceedings, March 18, 1997, at 30 (statements of Senator Radogno). Senator Radogno added that, as a result of the Act, "the worst of the worst, in terms of sex offenders, will be kept off the streets." 90th Ill. Gen. Assem., Senate Proceedings, May 21, 1997, at 24 (statements of Senator Radogno).

It is clear from these statements that the legislature's intent in enacting this law was "to keep our communities safe from predatory sex offenders who pose an ongoing threat to our citizens." *Lieberman*, 201 Ill. 2d at 319. To give section 15(b—5)(1) the construction that respondent seeks would run directly counter to this intent. Recall the particulars of respondent's case. Following the filing of a sexually violent person petition against respondent, the circuit court found that there was cause to believe that respondent was eligible for commitment

as a sexually violent person. Pursuant to section 30(b) of the Commitment Act, the circuit court held a hearing to determine if there was probable cause to believe that respondent was a sexually violent person. After conducting this hearing, the circuit court determined that there was, indeed, probable cause to believe that respondent was a sexually violent person. Subsequent to this determination by the circuit court, respondent moved to dismiss the sexually violent person petition on the ground that, under respondent's construction of section 15(b—5)(1) of the Act, the petition was untimely filed. The relief sought by respondent in his motion included his "immediate release from custody."

Construing section 15(b—5)(1) as respondent urges would mean that, even though the circuit court determined, pursuant to the Commitment Act, that there was probable cause to believe that respondent was a sexually violent person, respondent nevertheless would be immediately released from custody without proceeding to trial to determine if he was, indeed, a sexually violent person and therefore subject to civil detention under the Act. The sole reason for respondent's release would be that, under respondent's interpretation of section 15(b—5)(1), the sexually violent person petition was untimely filed. Given the Commitment Act's goal of "keep[ing] our communities safe from predatory sex offenders who pose an ongoing threat to our citizens" (*Lieberman*, 201 Ill. 2d at 319), we do not believe that the legislature intended such a short-circuiting of the Commitment Act's procedures when it enacted the section 15(b—5)(1) timing requirements for filing a petition. In circumstances such as those presented in the case at bar, it is more in keeping with the General Assembly's intent to construe section 15(b—5)(1) as referring to an inmate's *anticipated* entry into MSR, rather than his actual, or physical, entry into MSR. Under this construction, the sexually violent

person petition at issue in this appeal would be deemed timely filed under section 15(b—5)(1).

Our conclusion as to the proper construction of section 15(b—5)(1) is strengthened by a comparison with the speedy-trial statute (725 ILCS 5/103—5 (West 2000)), which is incorporated by reference in another section of the Commitment Act.[2] "This court has routinely interpreted statutes on the basis of reference to another statute by analogy." *People v. Cosenza*, 215 Ill. 2d 308, 315 (2005). The speedy-trial statute provides, in pertinent part:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody *unless delay is occasioned by the defendant* \*\*\*." (Emphasis added.) 725 ILCS 5/103—5 (West 2000).

Under this provision, if a defendant is not tried within the prescribed statutory period, he must be released from custody and is entitled to have the charges against him dismissed. *People v. Hall*, 194 Ill. 2d 305, 327 (2000). However, where the relevant delay is caused by the defendant, there is no violation of the speedy-trial statute. " 'Any period of delay found to be occasioned by the defendant tolls the applicable statutory period.' " *People v. Mayo*, 198 Ill. 2d 530, 537 (2002), quoting *Hall*, 194 Ill. 2d at 327; see also *People v. Hartman*, 408 Ill. 133, 136 (1951) ("where the failure to try the defendant within the time prescribed by the statute is occasioned by the defendant himself, the statute does not apply"). In our view, the same principle should apply to section 15(b—5)(1) of the Commitment Act. We agree with the circuit court judge below, who stated, in explaining the

---

[2]Section 35(a) (725 ILCS 207/35(a) (West 2000)), which provides the time limit within which a trial under the Act is to begin, states that any continuance of the trial date "shall be subject to Section 103—5 of the Code of Criminal Procedure of 1963."

denial of respondent's motion to dismiss the State's petition: "[I]n my way of thinking, the respondent cannot benefit from his own [dilatory] actions."

In the case at bar, it is undisputed that the delay in respondent's actually entering into MSR was caused exclusively by respondent. In his brief to the appellate court below, respondent conceded as much:

"In the instant case, the State filed its petition under 725 ILCS 207/15 on September 25, 2000, approximately 5 days before [respondent's] anticipated entrance into MSR on September 30, 2000. At this point, *the State had properly followed statutory procedures*." (Emphasis added.)

In other words, respondent acknowledged that when the State filed its sexually violent person petition on September 25, 2000, the petition was timely under section 15(b—5)(1) of the Commitment Act. If respondent had not refused to sign his statement of MSR conditions, thus delaying his actual entry into MSR, there would have been no dispute as to the timeliness of the State's petition. In such a situation, where the delay that allegedly rendered the State's petition untimely was occasioned entirely by respondent, this self-occasioned delay should not be counted in determining whether the State's petition met the time requirements of section 15(b—5)(1). Applying the self-occasioned-delay provision of the speedy-trial statute to section 15(b—5)(1) would mean that, for purposes of the time requirement, respondent entered into MSR on the anticipated date of September 30, 2000. Under this construction of section 15(b—5)(1), the State's petition, which was filed on September 25, 2000, would be deemed timely.

Notwithstanding the foregoing, respondent argues that, under the plain language of section 15(b—5)(1), "entry into mandatory supervised release" refers to an inmate's actual, or physical, release from incarceration into MSR, rather than his anticipated entry into MSR. In support of this contention, respondent asserts, as did the

appellate court below, that the timing requirements of section 15(b—5)(1) were designed by the legislature to protect an inmate's liberty interest in release from prison, and these timing requirements therefore must be strictly observed. In this argument, respondent appears to assert that the rule of lenity should be applied in this case. Under this rule of statutory construction, penal statutes, where ambiguous, are to be strictly construed to afford lenity to the accused. *People v. Hicks*, 164 Ill. 2d 218, 222 (1995); *People v. Brooks*, 158 Ill. 2d 260, 264 (1994).

We note, initially, that it is questionable whether the rule of lenity would apply to section 15(b—5)(1) of the Commitment Act, which is civil in nature. 725 ILCS 207/20 (West 2000). However, we need not answer this question. The rule of lenity does not apply to the situation presented in this case in any event. It is well settled that this rule does not require a court to construe a statute "so rigidly *** as to defeat the intent of the legislature." *People v. Washington*, 343 Ill. App. 3d 889, 903 (2003); accord *Brooks*, 158 Ill. 2d at 264; see also *Liparota v. United States*, 471 U.S. 419, 427, 85 L. Ed. 2d 434, 441, 105 S. Ct. 2084, 2089 (1985) (noting that "the rule of lenity is not to be applied where to do so would conflict with the implied or expressed intent of Congress"). In the case at bar, we have decided, as a matter of law, that a strict construction of section 15(b—5)(1) in favor of respondent *would* conflict with the intent of the legislature. Respondent's argument in this regard is therefore rejected.

In sum, we hold that, where, as in the matter at bar, an inmate refuses to sign his MSR statement of conditions and thereby delays his actual entry into MSR, it is not this actual entry date, but rather the inmate's *anticipated* date of entry into MSR, that will be used to determine whether a sexually violent person petition has

been timely filed under section 15(b—5)(1) of the Commitment Act. In such a situation, the term "entry into mandatory supervised release," as used in section 15(b—5)(1), is construed to refer to the inmate's anticipated date of entry into MSR, rather than his actual date of entry into MSR. Accordingly, respondent in the case at bar is deemed, for purposes of section 15(b—5)(1), to have entered into MSR on his scheduled date of September 30, 2000, rather than his actual date of March 14, 2001. Under our holding, the State's sexually violent person petition against respondent, which was filed on September 25, 2000, was timely under section 15(b—5)(1). The circuit court was therefore correct in denying respondent's motion to dismiss the State's petition as being untimely under section 15(b—5)(1), and the appellate court was incorrect in reversing the circuit court's denial of respondent's motion.

## CONCLUSION

We reverse the judgment of the appellate court, which reversed the circuit court's denial of respondent's motion to dismiss the State's sexually violent person petition. We affirm the circuit court's denial of respondent's motion to dismiss, and remand the cause to the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed;*
*cause remanded.*