No. 2--04--0492                                              filed 4/20/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--1867 |
| ANTHONY W. KOHL, | ) ) | Honorable Ann B. Jorgensen, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

_____

JUSTICE BOWMAN delivered the opinion of the court:

The resolution of this appeal depends on what the definition of "metal knuckles" is.[1]

_____

[1]Metal knuckles are perhaps more commonly known as "brass knuckles."  See Black's Law Dictionary 188 (6th ed. 1990) (noting that the term "brass knuckles" stems from the fact that the item was originally made of brass); see also People v. Whitfield, 8 Ill. App. 3d 210, 211 (1972), quoting M. Matthews, Dictionary of Americanisms __ (1951) (noting that metal knuckles are also called brass knuckles, and that the term is used to describe an item " 'used in fights by roughs [and] thugs' ").  Illinois Attorney General Opinion No. S--1386 (1978 Ill. Att'y Gen. Op. 161) notes that both Black's and Ballentine's law dictionaries indicate that the term "brass knuckles" is often still used to describe metal knuckles even though they may not be made of brass.

According to the State, an item consisting of a 3½-inch-long, 1½-inch-wide knife blade, two metal finger loops, and additional smaller blades is a set of metal knuckles. The trial court accepted this interpretation, and accordingly it found defendant, Anthony W. Kohl, guilty of being a felon in possession of a per se unlawful weapon under sections 24--1.1(a) and 24--1(a)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/24--1.1(a), 24--1(a)(1) (West 2002)). Kohl appeals, and we reverse.

## I. BACKGROUND

In March 2003, Kohl, who was on parole relating to a burglary conviction, received a visit at his Glendale Heights apartment from Agent Craig Woelfel of the Illinois Department of Corrections parole division. Agent Woelfel apparently went to Kohl's apartment to go over Kohl's parole agreement with him and to make sure he was complying with that agreement. While there, Agent Woelfel noticed some swords hanging on a wall and a pocket knife on a table. Agent Woelfel believed the swords and pocket knife might be considered collector's items, so he did not report Kohl as violating his parole agreement, which prohibited the possession of certain weapons. Nevertheless, Agent Woelfel told Kohl he needed to get rid of the items.

Kohl decided to have an indoor garage sale. He drew up and distributed flyers advertising the items for sale, which included coffee makers and swords. He got a quick response--from parole agent Jeffrey Bryant and a Glendale Heights police officer. Agent Bryant asked whether, as the garage sale flyer promised, Kohl had swords. Kohl said he did; he told Agent Bryant they were in a storage unit on the apartment's balcony. Agent Bryant searched the storage unit and found some swords and knives. At that point, Kohl was arrested.

Contending that several of the knives found in the storage unit were in fact "metal knuckles," the State charged Kohl with two counts of unlawful possession of a weapon by a felon. Under the

Code, Kohl could be found guilty based on his mere possession of metal knuckles (see 720 ILCS 5/24--1.1(a), 24--1(a)(1) (West 2002)), but to be found guilty based on his possession of knives, Kohl had to have possessed the items with the intent to use them unlawfully against another (see 720 ILCS 5/24--1.1(a), 24--1(a)(2) (West 2002)).[2] The State did not contend that Kohl intended to use any of the items unlawfully. So the only way to prove him guilty was to establish that one or more of the items was a set of metal knuckles. To this end, the State introduced four of the items found in Kohl's storage unit. All of these items were comprised of blades and metal handle grips in one form or another. And, according to the State, all of these items were metal knuckles.

The trial court agreed that one of the items was a set of metal knuckles, but found that the other three were knives. As for the item determined to be a set of metal knuckles (which is the only one with which we are concerned here), it consists of the following: a grip on which the holder rests two fingers and from which two thin, pointed, two-inch metal projectiles extend at right angles; and

[2]There is no suggestion that the item Kohl was convicted of possessing falls into the category of knives that are per se unlawful. See 720 ILCS 5/24--1(a)(1) (West 2002) (per se unlawful knives include "any knife[ ] commonly referred to blade knife ***, or a ballistic knife, which is a device that propels a knifelike blade as a by means of a coil spring, elastic material or compressed gas").

two metal loops into which the holder inserts his or her middle and ring fingers, and from which extend at 45-degree angles two stubbier, half-inch metal projectiles, and from which also extends, straight out, a 3½-inch-long, 1½-inch-wide sharp pointed blade, shaped like an arrow head. Here is a picture of the item:

After determining that the above item was not a knife but, instead, a set of metal knuckles, the trial court found Kohl guilty of both counts of unlawful possession of a weapon by a felon and merged the first count into the second (which alleged that Kohl was on parole). See 720 ILCS 5/24--1.1(e) (West 2002). The court then denied Kohl's motion for a new trial and sentenced him to five years in prison. He appeals.

## II. ANALYSIS

The question presented by Kohl's appeal is this: does an item consisting of a 3½-inch-long, 1½-inch-wide sharp knife blade, and several smaller, blade-like projectiles, amount to a set of metal knuckles simply because the item happens to be gripped by resting two fingers on the handle and inserting two fingers through metal loops, which, if the item were used against somebody, would not make contact with that person unless the 3½-inch knife blade were already buried in his or her body?

To answer that question, we must construe the meaning of "metal knuckles" as the term is used in the Code. As noted, the trial court construed "metal knuckles" as including the item described above. There is some dispute as to the standard we should apply in reviewing that determination. For his part, defendant argues that, since this is a question of statutory construction, we should apply the standard of review we always apply in cases of statutory construction, i.e., de

novo. See, e.g., In re Detention of Powell, 217 Ill. 2d 123, 135 (2005) (stating that t he issue before us is a matter of statutory construction, and our review is therefore de novo ; People v. Collins, 214 Ill. 2d 206, 214 2005 stating that, b ecause the construction of a statute is a question of law, the standard of review is de novo ; People v. Grever, 353 Ill. App. 3d 736, 751 (2004) (stating that i ssues of statutory construction are questions of law subject to de novo review . The State, however, argues that, although this is a case of statutory construction, we should not apply the statutory construction standard of review. Instead, as the State sees it, the trial court's determination that the item at issue is a set of metal knuckles is a factual finding and, as such, it is entitled to deference.

There are two serious problems with the State's argument. First, the State has cited no authority in support of it, and, arguably, it is waived. See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001; People v. Morales, 343 Ill. App. 3d 987, 989 (2003). Second, and more importantly, waiver aside, the State's argument demonstrates a fundamental misunderstanding of the nature of the finding that the trial court made here. The State argues that the trial court's determination that the item at issue is a set of metal knuckles was a factual finding. In fact, however, it was a legal one. See People v. Velez, 336 Ill. App. 3d 261, 265 (2003) (question of whether item at issue was "switch blade" within meaning of section 24--1 was one of statutory construction subject to de novo review). Of course, it is beyond serious dispute that legal findings--such as a trial court's interpretation of a statute--are entitled to no deference. Powell, 217 Ill. 2d at 135; Grever 353 Ill. App. 3d at 751. Additionally, the facts concerning the composition and structure of the metal item are uncontested. See People v. Herman, 347 Ill. App. 3d 525, 529 (2004) (applying de novo review where facts were not contested). Accordingly, in this case, as in all cases of statutory construction, we review de novo the trial court's determination that an item comes within the definition of a statutory term.

We turn now to consider whether the item here fits within the meaning of metal knuckles. Our primary objective when construing the meaning of a statutory term is to give effect to the legislative intent behind that term. See In re Madison H., 215 Ill. 2d 364, 372 (2005). In construing a statutory term, we must presume that the legislature did not intend unjust, inconvenient, or absurd results. People ex. rel Birkett v. Jorgensen, 216 Ill. 2d 358, 363 (2005). Further, under the principle of lenity, we must construe any ambiguity in a penal statute in favor of the accused. See People v. Hicks, 164 Ill. 2d 218, 222 (1995).

According to the Code, a person is guilty of unlawful possession of a weapon by a felon if he or she "*knowingly possessed any weapon prohibited under Section 24--1 of this Code*. 720 ILCS 5/24--1.1(a) (West 2002). Section 24--1 prohibits the possession of any "bludgeon, black-jack, slung-shot, sand-club, sand-bag, metal knuckles, throwing star, or any knife, commonly referred to as a switchblade knife, which has a blade that opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife, or a ballistic knife, which is a device that propels a knifelike blade as a projectile by means of a coil spring, elastic material or compressed gas." 720 ILCS 5/24--1(a)(1) (West 2002). Under section 24--1 of the Code, we see that the possession of some items is considered per se unlawful--that is, their mere possession is illegal--whereas the possession of other items is considered illegal only if the possessor intends to use them unlawfully. Compare 720 ILCS 5/24--1(a)(1) (West 2002) (*a person commits an offense when he knowingly possesses* with 720 ILCS 5/24--1(a)(2) (West 2002) (*a person commits an offense when he knowingly possesses with intent to use the same unlawfully against another*; see also People v. Sullivan, 46 Ill. 2d 399, 402-03 (1970) (referring to subsection (a)(1) and stating that "[t]he legislature has specifically named the weapons, the simple possession of which is per se unlawful"). Metal knuckles fall into the per se unlawful category; most knives, however, do not. See 720 ILCS

5/24--1(a)(1) (West 2002). The Code does not define "metal knuckles." Of the various weapons listed in section 24--1(a)(1), only a switchblade knife and a ballistic knife are defined. See 720 ILCS 5/24--1(a)(1) (West 2002).

Under well-settled principles of statutory construction, an undefined term must be given its ordinary and popularly understood meaning. People v. Ward, 215 Ill. 2d 317, 325 (2005). And to determine that meaning, we may look to a dictionary. See People v. Collins, 214 Ill. 2d 206, 214-15 (2005). The American Heritage Dictionary says metal knuckles are a *metal chain or a set of rings attached to a bar that can be fitted over the fingers to increase the impact of a blow with the fist.* *American Heritage Dictionary* *4th ed.* . This definition makes clear that the term "metal knuckles," popularly understood, refers to a weapon with one main purpose: to increase the power--and, hence, the impact--of a punch. Black's Law Dictionary defines metal knuckles as a "weapon worn on the hand for the purposes of offense or defense, so made that in hitting with the fist considerable damage is inflicted." Black's Law Dictionary 188 (6th ed. 1990). The Black's Law Dictionary definition conceivably could include any type of metal weapon worn on the hand and made to inflict considerable damage in hitting. Webster's Third New International Dictionary does not define metal knuckles. However, Webster's does define "brass knuckles" as "a set of four metal finger rings or guards attached to a transverse piece and worn over the front of the doubled fist for use as a weapon." Webster's Third New International Dictionary 269 (1986). Therefore, definitionally, the weapon in question is not a set of metal knuckles.

Four important considerations support this conclusion. First, the item's appearance undermines the argument that it is a set of metal knuckles. To be sure, the item does include two complete metal loops into which the holder's middle and ring fingers may be placed. But jutting forth from these loops is a long, thick knife blade. If a person were to punch someone while wearing this

item, the problem for the victim would not be that the metal loops would add to the impact of the assailant's fist. Indeed, the metal loops would not even make contact with the victim until a 3½-inch-long, 1½-inch-wide blade were buried in the victim's body. The State argues that this contact with the blade would be merely "incidental." In other words, the State argues that a blade jammed more than three inches deep into a person's body has made merely incidental contact with that person. We cannot agree with that assessment. Moreover, contrary to the State's assertion, if the item were used offensively, it would not necessarily be used in a punching or jabbing manner. Rather, the item could be used in a slashing manner. The State does not suggest that metal knuckles are a slashing weapon; nor do we understand this to be the case. Thus, the item is not a set of metal knuckles.

Second, it would be unjust to classify the item as metal knuckles. Were we to do so, then any object could be classified as a set of metal knuckles based solely on the way that the object is gripped. More importantly, this would be so notwithstanding that the object--if used as a weapon--would not inflict injury primarily because the grip would come into contact with the victim. Rather, the primary injury would occur in some other way, for example, because a large knife blade would be driven into the victim. Because accepting that interpretation would lead to unjust results, fundamental principles of statutory construction require us to reject it. See Jorgensen, 216 Ill. 2d at 363.

Third, it would make little sense to conclude that, simply because a large knife blade is gripped, in part, through two finger loops, the legislature intended the item to be classified as a set of metal knuckles, notwithstanding that the item is neither designed as a traditional set of metal knuckles nor used in the way metal knuckles are used. Again, we may not interpret a statute in a way that produces absurd results. Jorgensen, 216 Ill. 2d at 363. Thus, for this reason too, we must reject the State's argument.

Fourth, case law supports the conclusion that the item is not a set of metal knuckles. In People v. Whitfield, 8 Ill. App. 3d 210, 212 (1972), the court found that just because an item included metal and was worn over the defendant's fist did not mean that the item was a set of metal knuckles. There, during a protest in front of a store, the defendant wore a spiked wristband across his fist, which he pointed at several people in the store. The defendant was arrested and charged with possession of a per se unlawful item, i.e., metal knuckles. The court found that the item that the defendant had possessed was not metal knuckles. Whitfield, 8 Ill. App. 3d at 212. In doing so, the court reasoned that the prohibition on metal knuckles applied to a category of weapon with a particular design--a category that the defendant's wristband did not fit into. Whitfield, 8 Ill. App. 3d at 212.

Likewise, in the present case, the design of the item takes it out of the metal knuckles category. As noted, metal knuckles are in a category of weapons primarily designed to inflict injury by strengthening the power of a punch. Also as noted, if the item here were used as a weapon, the main injury to the victim would be having a big blade buried in the victim's body. Thus, here, as in Whitfield, the item is not a set of metal knuckles.

The State makes an unconvincing attempt to distinguish Whitfield. Specifically, the State argues that here, unlike in Whitfield, the design and purpose of the item make it a set of metal knuckles. We have already rejected that argument. Thus, the State's attempt to distinguish Whitfield fails.

The reasoning of cases involving other allegedly per se unlawful weapons also supports our conclusion that the item here is not a set of metal knuckles. For example, the courts of this state have repeatedly rejected a broad definition of "bludgeon" as that term is used in section 24--1(a)(1). See People v. Fink, 94 Ill. App. 3d 816, 817 (1981); People v. Tate, 68 Ill. App. 3d 881, 883 (1979). These cases urge a narrow interpretation of what constitutes a per se unlawful weapon under section

24--1(a)(1). And they remind us that, as noted above, any doubt as to whether that section applies must be resolved in favor of the defendant. See People v. Milka, 211 Ill. 2d 150, 185 (2004); People v. Vue, 353 Ill. App. 3d 774, 779 (2004). Therefore, these cases provide additional support for our conclusion that the item here is not a set of metal knuckles.

Cases from other jurisdictions also lend support to our conclusion. In People v. Laguna, 124 Misc. 2d 182, 183-85, 475 N.Y.S.2d 783, 784-85 (N.Y. Crim. Ct. 1984), the court rejected the argument that an item similar to the one at issue in Whitfield qualified as a set of metal knuckles. The following language in Laguna is appropriate to the current situation: " 'to base a conviction on mere possession it must clearly appear that the thing possessed answers the description of one of the prohibited instruments or weapons.' " Laguna, 124 Misc. 2d at 184, 475 N.Y.S.2d at 785, quoting People v. Visarities, 220 A.D. 657, 658, 222 N.Y.S. 401, 403 (1927). Additionally, in Commonwealth v. Fisher, 485 Pa. 8, 12, 400 A.2d 1284, 1286 (Pa. 1979), the Pennsylvania Supreme Court, while not addressing directly the precise question presented here, found that a " 'Wyoming Knife' " was not a prohibited "offensive weapon," which was defined to include metal knuckles. The Wyoming Knife was comprised of a metal handle, with two finger holes, which incorporated two blades, one facing outward, the other inward. Fisher, 485 Pa. at 11, 400 A.2d at 1286. Both of these cases support the above conclusion--that is, the item here is not a set of metal knuckles.[3]

---

[3]For cases from other jurisdictions, which we find distinguishable, that found that certain items constituted metal knuckles, see Maldonado v. Texas, 887 S.W.2d 508 (Tex. App. 1994) (finding that whether a locked blade knife with three broken knuckle rings and one unbroken ring constituted "knuckles" under a statutory definition was a jury question); Shattuck v. Oklahoma, 731 P.2d 1388 (Okla. Crim. App. 1987) (finding that a knife that had handgrips similar to a set of brass

knuckles was an offensive weapon pursuant to a statute that made it unlawful to carry upon or about one's person, or in one's portfolio or purse, any of a list of weapons, including metal knuckles); and People v. Singleton, 127 Misc. 2d 735, 487 N.Y.S.2d 268 (1985) (involving a weapon composed of two connecting parts, the larger being a leather strap designed to be worn on the wrist and hand, approximately two inches wide at the wrist and widening to cover the back of the hand from the wrist to just above the knuckles, with several metal spikes, each approximately half an inch long fastened to the strap, and the smaller also being a strap with fastened metal spikes that was connected to the first strap and kept in place over the knuckles and fist by an attached leather loop for inserting the fingers; court found that, although not defined by statute, under a commonsense three-factor approach, whether an item was metal knuckles could constitute a question of fact).

To summarize, the item Kohl possessed is not a set of metal knuckles. Because it is not, the trial court erred in finding Kohl guilty of unlawful possession of a weapon by a felon, based on his possession of a per se unlawful weapon. Accordingly, the trial court's decision cannot stand.

III. CONCLUSION

For the reasons stated, the judgment of the circuit court of Du Page County is reversed.

Reversed.

GROMETER, P.J., concurs.

JUSTICE CALLUM, dissenting:

Because I believe the weapon here satisfies the dictionary definition of metal knuckles and because I believe other considerations weigh in favor of concluding that the weapon constitutes metal knuckles, I respectfully dissent.

The majority cites several dictionary definitions of metal or brass knuckles and concludes, without explanation, that the weapon here does not fit any of the definitions. I disagree. The weapon certainly consists of "a set of rings"--specifically, two--"attached to a bar that can be fitted over the fingers"--there is a bar over the metal rings--"to increase the impact of a blow with the fist"--the weapon here certainly increases the impact of a blow. See American Heritage Dictionary ___ (4th ed. ____). Turning to the Webster's definition, I believe that the weapon in question satisfies its definition of brass knuckles: it consists of "a set of four metal finger rings or guards"--our weapon has two rings/loops and two guards--"attached to a transverse piece"--the weapon has a bar or transverse piece over the two finger rings and a transverse piece across the underside of the rings and rests--"and worn over the front of the doubled fist for use as a weapon." (Emphasis added.) Webster's Third

New International Dictionary 269 (1986).[4] Unless the majority is making the dubious assertion that there must be four rings or four guards--it must concede that this item fits the Webster's definition.

I disagree with the majority's assertion that the item's appearance undermines the argument that it is a set of metal knuckles. The majority appears to believe that the item must be either a set of metal knuckles or a knife, but not both. I see no reason to limit the inquiry in this way. Further, I disagree with the majority's conclusion that the item does not constitute metal knuckles because it may be used in a slashing manner. Although this may be the case, it does not take away from the weapon's primary means of use--in a punching or jabbing manner. Metal knuckles with blades attached to them are still metal knuckles.

I also disagree with the majority's assertion that it would be unjust to classify the weapon here as a set of metal knuckles. According to the majority, if we were to do so, then any object could be classified as a set of metal knuckles based solely on the way that it is gripped, notwithstanding that

---

[4] I do not address at length the Black's Law Dictionary definition, as even the majority concedes that it is broad enough to encompass the weapon in question. See Black's Law Dictionary 188 (6th ed. 1990).

the object would not inflict injury primarily because the grip makes contact with the victim. This argument is, again, premised on the assumption that the object must be either a set of metal knuckles or a knife, which I reject. The majority's assertion that it would be unjust to classify the weapon as metal knuckles solely on the way that it is gripped ignores the dictionary definitions of metal or brass knuckles. In addition to specifying the way that it is gripped, those definitions require that the weapon increase the impact of a blow with the fist, which clearly this does, or be worn over the doubled fist for use as a weapon, which this is.

Next, the majority asserts that it makes little sense to conclude that the legislature intended the weapon to be classified as metal knuckles simply because it is gripped, in part, through two metal loops, notwithstanding that it is neither designed nor used like a traditional set of metal knuckles. I disagree with this reasoning. The item here consists of a base that is clearly a set of traditional metal knuckles.[5] Affixed to the base are several small blades and one long blade. It is designed to be used like a traditional set of metal knuckles--to increase the impact of a blow or punch when the object makes contact with the victim. I fail to see how it makes little sense to classify the item as metal knuckles when it is designed as a set of metal knuckles and is intended to be used in the manner of metal knuckles. The blades certainly make the weapon more dangerous than a traditional set of metal knuckles, but I do not believe their presence precludes classifying the item as metal knuckles. In my

---

[5]For this reason, I find the majority's reliance on cases construing the term "bludgeon" (720 ILCS 5/24--1(a)(1) (West 2000)) to be misplaced. Those cases instruct that Illinois courts have rejected construing the term broadly to include any club-like weapon. See, e.g., Vue, 353 Ill. App. 3d at 780. Here, in contrast, the base of the weapon is unquestionably a set of traditional metal knuckles.

view, it is immaterial that the item might also satisfy the definition of a knife. As the majority notes, the legislature placed metal knuckles in the per se unlawful category: their mere possession is a crime, without the need to demonstrate an unlawful purpose. I doubt that the legislature intended that people could skirt this prohibition by attaching knife blades to the metal knuckles, thereby making them even more dangerous.

Next, I find the majority's reliance on Whitfield to be misplaced. Whitfield is clearly distinguishable, as the item there did not satisfy the definition of metal knuckles. That weapon did not consist of finger rings or guards and was not designed to protect the knuckles and increase the impact of a punch.

Finally, I disagree with the majority's assertion that the main injury to a victim here would be a large blade buried in the victim's body and that this is not an injury that results from a powerful punch or blow. The weapon is designed to inflict injury by increasing the power or impact of a blow. That it does so via a blade buried in the victim's body does not, in my view, take away from the fact that it satisfies the definition of metal knuckles.

In summary, I would affirm the trial court's order.