THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SCOTT O. VUE, Defendant-Appellant.

Second District   No. 2—03—0386

Opinion filed November 17, 2004.

G. Joseph Weller and Dev A. Parikh, both of State Appellate Defender's Office, of Elgin, for appellant.

Linda A. Giesen, State's Attorney, of Dixon (Martin P. Moltz and Barry W.

Jacobs, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BYRNE delivered the opinion of the court:

Following a jury trial, defendant, Scott O. Vue, was found guilty of two counts of home invasion (counts I, II) (720 ILCS 5/12—11(a)(1), (2) (West 2000)), one count of armed robbery (count III) (720 ILCS 5/18—2(a)(1) (West 2000)), one count of robbery (count IV) (720 ILCS 5/18—1(a) (West 2000)), one count of residential burglary (count V) (720 ILCS 5/19—3 (West 2000)), one count of armed violence (count VI) (720 ILCS 5/33A—2(a) (West 2000)), three counts of aggravated battery (counts VII through IX) (720 ILCS 5/12—4(b)(1), (b)(2), (b)(10) (West 2000)), and one count of unlawful use of weapons (count X) (720 ILCS 24—1(a)(2) (West 2000)). After the finding of guilty, the trial court vacated count I of home invasion, count IV of robbery, counts VII and IX of aggravated battery, and count X of unlawful use of weapons. Thereafter, the court entered convictions and sentenced defendant to 10 years in prison for count II of home invasion and 15 years for count III of armed robbery, to be served consecutively. The court further sentenced defendant to 5 years' imprisonment each for count V of residential burglary, count VIII of aggravated battery, and count VI of armed violence to be served concurrently to each other but consecutively to the armed robbery and home invasion convictions, for a total of 30 years in prison. Defendant contends: (1) the trial court erred in admitting collateral evidence of uncharged misconduct; (2) his conviction of armed violence must be vacated because the flashlight used to commit the aggravated battery is not a dangerous weapon within the meaning of the armed violence statute; (3) his conviction of aggravated battery must be vacated because that offense is a lesser included offense of home invasion; (4) his conviction of residential burglary must be vacated because it is carved from the same physical act as his conviction of home invasion; (5) the trial court erred in imposing consecutive sentences; and (6) the trial court improperly considered that he received compensation as a factor in aggravation for the armed robbery sentence. We affirm in part and vacate in part.

## BACKGROUND

On September 3, 2001, Arden Strub, age 71, was talking on the phone in his home when defendant and codefendant Thomas J. Cover entered his residence through the front door by cutting the screen and unlocking the screen door. Defendant struck Strub in the head with a metal flashlight numerous times. Strub incurred multiple orbital fractures and a laceration which penetrated to the scalp's muscle. As Strub lay on the floor bleeding profusely, defendant and Cover went to

a file cabinet in the living room where they knew Strub kept valuable belongings. Cover left Strub's home and joined defendant, who brought a box full of pennies, sports memorabilia, and $500 from Strub's residence. The codefendants then left for Milwaukee, Wisconsin, with defendant's girlfriend, Stephanie Machen. Cover later turned himself in to the police. Several days after that, defendant and Machen were arrested in LaCrosse, Wisconsin.

## ANALYSIS

### 1. Introduction

■ Before reaching the merits, we briefly address defendant's failure to preserve all of the issues except the argument regarding consecutive sentences. To preserve an error for review, a defendant must both object to the alleged error during the trial and renew the objection in his written posttrial motion. *People v. Flynn*, 341 Ill. App. 3d 813, 828 (2003). Defendant admits that he has waived these issues, but asks that we consider them as plain error. The plain error exception to the waiver rule may be invoked where (1) the evidence is closely balanced or (2) the error is of such magnitude that there is a substantial risk that the defendant was denied a fair trial and remedying the error is necessary to preserve the integrity of the judicial process. *People v. Smith*, 341 Ill. App. 3d 729, 737 (2003).

Our review of the evidence is that it was not closely balanced. Cover's account of defendant's actions from September 3, when they were at Strub's home, until September 6, when they parted company, provided direct and credible evidence of defendant's guilt. The circumstantial evidence offered by the numerous other prosecution witnesses repeatedly corroborated Cover's account of defendant's actions and participation in the crimes. Moreover, the determination of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact. *People v. Brisbon*, 106 Ill. 2d 342, 360 (1985). The fact that cooperation agreements existed between the State and the witnesses did not cause the evidence to be closely balanced. Accordingly, because the evidence was not closely balanced, we must review those issues defendant failed to preserve for review under the second prong of the plain error analysis.

### 2. Collateral Evidence of Uncharged Misconduct

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### 3. Armed Violence Statute

Defendant next contends that he was wrongly convicted of armed

violence because the metal flashlight he used to commit the aggravated battery is not a dangerous weapon within the meaning of the armed violence statute (720 ILCS 5/33A—2 (West 2000)). Our research has disclosed no Illinois case that has decided the exact question of whether a flashlight falls within the definition of a bludgeon as used in the armed violence statute.

The armed violence statute provides the following:

"A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law ***." 720 ILCS 5/33A—2 (West 2000).

Under section 33A—1(c)(1) of the Criminal Code of 1961, a person is "considered armed with a dangerous weapon for purposes of this Article, when he or she carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon." 720 ILCS 5/33A—1(c)(1) (West 2000). In charging defendant with a Class 2 felony, the State classified the metal flashlight as a Category III weapon. See 720 ILCS 5/33A—3(b) (West 2000). A Category III weapon is defined as "a bludgeon, black-jack, slungshot, sand-bag, sand-club, metal knuckles, billy, or other dangerous weapon of like character." 720 ILCS 5/33A—1(c)(3) (West 2000). Because the interpretation of the armed violence statute presents a question of law, our review is *de novo*. See *People v. Davis*, 199 Ill. 2d ⁀30, 135 (2002).

In *Davis*, the supreme court recently considered the narrow issue of whether a pellet/BB gun is a dangerous weapon within the meaning of the 1992 armed violence statute. The court noted that the legislature defined the term "dangerous weapon" in section 33A—1. *Davis*, 199 Ill. 2d at 133. Under that section, "[a] person is considered armed with a dangerous weapon *** when he carries on or about his person or is otherwise armed with a category I or category II weapon." 720 ILCS 5/33A—1(a) (West 1992). In 1992, the legislature defined a category I weapon as "a pistol, revolver, rifle, shotgun, spring gun, or any other firearm, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, or any other deadly or dangerous weapon or instrument of like character." 720 ILCS 5/33A—1(b) (West 1992). A category II weapon was defined as "a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character." 720 ILCS 5/33A—1(c) (West 1992). The 1992 armed violence statute differed slightly from the 2000 statute relevant to the case at bar. The dangerous weapons that were listed in category I are now listed as separate category I and II weapons, and former category II weapons are now listed as category III weapons.

The *Davis* court noted that pellet/BB guns were not specifically included in the detailed list of firearms. The court concluded that, if the pellet/BB gun were to fall within the statute, it would have to do so through the two inclusive clauses for category I weapons—"any other firearm" and "any other deadly or dangerous weapon or instrument of like nature." *Davis*, 199 Ill. 2d at 136.

In determining whether the pellet/BB gun fit within the first inclusive clause, "any other firearm," the court considered that the lower courts did not recognize it as a firearm and the legislature did not statutorily define it as such. The court concluded that it was reasonable to assume the legislature did not view BB guns or pellet guns as "firearms" and, consequently, did not intend these devices to be included under the clause "any other firearm" in the armed violence provision. *Davis*, 199 Ill. 2d at 136-37.

In applying the doctrine of *ejusdem generis* and the last antecedent rule, the court also determined that the pellet/BB gun did not fit within the second clause, "any other deadly or dangerous weapon or instrument of like nature." The doctrine of *ejusdem generis* provides that when a statutory clause specifically describes several classes of persons or things and then includes "other persons or things," the word "other" is interpreted as meaning "other such like." *Farley v. Marion Power Shovel Co.*, 60 Ill. 2d 432, 436 (1975), quoting *People v. Capuzi*, 20 Ill. 2d 486, 493-94 (1960). The last antecedent doctrine provides that relative or qualifying words or phrases in a statute serve only to modify words or phrases which are immediately preceding. They do not modify those that are more remote. *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 511-12 (1998). The *Davis* court observed that the second inclusive clause, "any other deadly or dangerous weapon or instrument of like nature," came at the end of the list of blade-type weapons and was intended to refer only to weapons or instruments "such like" the class of blade-type weapons which immediately preceded the clause in the provision, *i.e.*, weapons or instruments that are sharp and have the ability to cut or stab. The court believed that the clause was not intended to modify all of the named weapons and therefore was not intended to include BB guns or pellet guns or any other weapons, which are not firearms, but are *of like nature* to firearms. *Davis*, 199 Ill. 2d at 138-39.

The *Davis* court further observed that the legislature, concerned with the possession of weapons during the commission of felonies, adopted the armed violence statute to discourage those who contemplated felonious acts beforehand from carrying weapons when they set forth to perform the acts. *Davis*, 199 Ill. 2d at 139. While the court noted that pellet guns had been considered dangerous weapons for

purposes of the armed robbery statute, in none of the cases cited were the defendants ever charged with armed violence. *Davis*, 199 Ill. 2d at 139-40. In addition, in cases where armed violence had been charged and the defendant was armed with a weapon that was not specifically listed in the statute, reliance was placed on the "any other dangerous weapon or instrument of like nature" clause because the weapon was of like nature to the blade-type weapons listed. See, *e.g., People v. Ptak*, 193 Ill. App. 3d 782 (1990) (broken beer bottle); *People v. Thornton*, 145 Ill. App. 3d 669 (1986) (broken beer bottle); *People v. Chrisos*, 142 Ill. App. 3d 747 (1986) (sharp piece of glass).

Although the court read the statute as not including pellet/BB guns, it noted that, even if there were some ambiguity, it would be constrained by the rule of lenity to interpret the statute in a lenient manner. The court observed that where a criminal statute is capable of two constructions, courts must adopt the one that operates in favor of the accused, particularly where the criminal statute operates as an enhancement provision, as in the case of the armed violence statute. *Davis*, 199 Ill. 2d at 140.

For the same reasons, the *Davis* court found that the pellet/BB gun used by the defendant was not a category II dangerous weapon. As stated above, similar to the present statute, the 1992 statute defined a category II (now category III) dangerous weapon as "a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character." 720 ILCS 5/33A— 1(c) (West 1992). In applying the statutory principles to this section of the statute, the court noted that, although a metal pellet/BB pistol might be capable of being used as a bludgeon, it is not typically identified as such and, under the doctrine of *ejusdem generis*, could not be interpreted to be "of like character" to the bludgeon-type weapons included in the category II listing. *Davis*, 199 Ill. 2d at 141.

Defendant argues that, in applying the principles espoused in *Davis* to the present case, it is clear that he was not armed with a dangerous weapon within the meaning of the armed violence statute. Defendant believes that *Davis*'s principles require that the item classified under the armed violence statute must be inherently a weapon to qualify as a dangerous weapon under the armed violence statute. Because a flashlight is not considered a dangerous weapon and is not of like character to the weapons listed in category III, defendant contends that he should not have been charged with armed violence. The State disagrees and contends that *Davis* acknowledged that where an item that is not inherently a weapon but is of like character and is used like one of the listed weapons, it may properly be considered to be a "dangerous weapon" within the meaning of the armed violence

statute. The State argues that, while a flashlight's principal purpose is not to bludgeon, it does have a similar shape and it can readily be used as a bludgeon-type weapon, just as a broken beer bottle or a shard of glass can be used as a blade-type weapon.

The word "bludgeon" is not defined by the statute. Dictionaries generally describe a bludgeon as being a short stick used as a weapon usually having one thick, heavy, or loaded end. See, *e.g.*, Webster's Third New International Dictionary 240 (1993); see also *People v. Fink*, 94 Ill. App. 3d 816, 817 (1981).

Illinois cases that have considered whether a particular object is a bludgeon within the meaning of section 24—1(a)(1) of the Criminal Code (unlawful use of weapons) (720 ILCS 5/24—1(a)(1) (West 2000)) generally have rejected the State's urging that the term "bludgeon" be construed broadly to include any club-like weapon. In *Fink*, the State argued that a nightstick had both the physical and functional attributes of a bludgeon, that the word "bludgeon" should be defined with sufficient breadth to include any club-like weapon, and that the potential or actual use of an instrument is vital to a determination of whether a particular object is a bludgeon. *Fink*, 94 Ill. App. 3d at 817. While we were aware of the nightstick's potential use as a billy club, our reading of the various subsections of section 24—1 caused us to expressly reject the State's urging that the term "bludgeon" be construed broadly to include any club-like weapon. *Fink*, 94 Ill. App. 3d at 819. In *People v. Tate*, 68 Ill. App. 3d 881 (1979), the court found that karate sticks, two 12-inch wooden sticks connected with a 6- to 7-inch chain, did not constitute a bludgeon for purposes of section 24—1(a)(1). Additionally, under general rules of statutory construction, because the statute did not specifically list karate sticks as a weapon, the karate sticks could not be considered a weapon under that subsection.

■ We reject the State's interpretation of *Davis*. The legislature directs that the item must be a "dangerous *weapon* of like character." (Emphasis added.) 720 ILCS 5/33A—1(c)(3) (West 2000). It does not state that an item qualifies as a bludgeon if it shares physical characteristics with a bludgeon and is used in a bludgeon-like manner to harm the victim. Otherwise, the *Davis* court would have found the pellet/BB gun to be a bludgeon within the meaning of the statute. We believe that the legislature intended that the item used in category III under the armed violence statute be an inherently dangerous weapon. Although a metal flashlight shares physical characteristics with a bludgeon and may be capable of being used as a bludgeon, it is not commonly identified as a dangerous weapon or commonly used as one and, under the doctrine of *ejusdem generis*, cannot be interpreted

under the statute to be "of like character" to the bludgeon-type *weapons* included in the category III listing. Moreover, contrary to the State's argument, common sense dictates that a broken beer bottle or a shard of glass is similar to a blade-type weapon because it has no legitimate use other than as a dangerous weapon. On the other hand, a flashlight is not inherently a dangerous weapon and has a legitimate use. As such, it should not be considered a dangerous weapon for purposes of the armed violence statute.

At this point, we wish to note that the State did not introduce the actual flashlight used, as it was never recovered. From a description, the State introduced a Mag flashlight purported to be similar to the type of flashlight used by defendant. Furthermore, there was no testimony that the flashlight used by defendant was physically modified in any way to make it appear more "bludgeon-like" so that he intended to use it as a weapon. It is clear that the legislature did not intend to define the term "bludgeon" so broadly as to include any club-like item that could be used as a bludgeon; that would invite undue abuse. However, each case must be decided on its own particular facts. Accordingly, in this case, we find that the metal flashlight is not a category III dangerous weapon within the armed violence statute's meaning. Therefore, defendant's conviction of armed violence must be vacated.

## 4. Aggravated Battery Conviction

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

## 5. Residential Burglary

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

## 6. Consecutive Sentencing

Defendant's fifth contention is that the trial court should modify his sentences so that either, but not both, of his convictions of home invasion and armed robbery triggers consecutive sentences pursuant to section 5—8—4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—4(a) (West 2000)). According to defendant, because there was only one harm, the injury to the victim's head, there should have been only one triggering offense, and therefore we should find that his five-year sentences for residential burglary, armed violence, and aggravated battery would run concurrently to his other sentences, not consecutively.

■Although we have determined that the convictions of residential burglary, armed violence, and aggravated battery should be vacated,

and defendant admits that each of his convictions of armed robbery and home invasion triggers consecutive sentencing, we must point out that defendant misinterprets the statute. Clearly, the statute does not require that severe bodily injury be apportioned among various offenses or that the number of injuries correlate with the number of triggering offenses, as defendant suggests. The statute provides that "[t]he court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless: (i) one of the offenses for which defendant was convicted was *** a Class X *** felony and the defendant inflicted sever bodily injury, *** in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5—8—4(a)(i) (West 2000). Here, as stated in section 5—8—4(a)(i), one of the offenses of which defendant was convicted is a Class X felony, and the trial court found that defendant inflicted severe bodily harm on the victim. As such, the trial court was required to impose consecutive sentences.

### 7. Aggravating Factor in Sentencing

■ Defendant's final contention is that he was prejudiced when the trial court improperly considered that he received $500 in compensation as an aggravating factor for his armed robbery sentence although that factor was inherent in the offense. In his memorandum order setting forth his reasons for structuring defendant's sentences, the trial judge explicitly stated that he relied on defendant receiving $500 compensation as a factor in aggravation for the armed robbery conviction. The trial court sentenced defendant to 15 years' imprisonment for armed robbery. The sentencing range for a Class X felony is 6 to 30 years. See 730 ILCS 5/5—8—1(a)(3) (West 2000). Section 5—5—3.2(a)(2) of the Code (730 ILCS 5/5—5—3.2(a)(2) (West 2000)) provides that the trial court can consider compensation for committing the offense as a factor to accord weight in favor of imposing a term of imprisonment or may consider it as a reason to impose a more severe sentence under section 5—8—1 of the Code (730 ILCS 5/5—8—1 (West 2000)).

A factor implicit in most burglaries and thefts should not be used as an aggravating factor at sentencing. *People v. Conover*, 84 Ill. 2d 400, 404 (1981). Therefore, compensation may be considered as a factor in aggravation only when one is remunerated to commit an offense, whether the offense is burglary or theft, in which proceeds may be taken, or whether the crime is one that does not involve proceeds, such as aggravated battery. *Conover*, 84 Ill. 2d at 405. Here, there was no evidence that defendant committed the offense for remuneration.

Rather, the evidence revealed that defendant received the proceeds of the offense. Accordingly, the trial court abused its discretion by improperly considering defendant's taking of the proceeds as an aggravating factor in sentencing.

Citing *People v. Burge*, 254 Ill. App. 3d 85 (1993), defendant contends that, because a mid-range, 15-year sentence was imposed on his armed robbery conviction, the error was prejudicial. The State contends that the error was harmless because the court also considered: (1) defendant's 1996 and 2000 convictions of domestic battery to his mother; (2) defendant's 2001 conviction of aggravated assault using a dangerous weapon; (3) the victim was over the age of 60 years; and (4) a significant sentence was necessary to deter others. We agree with the State. While it was error for the court to make reference to the receipt of compensation, we find such error harmless because the trial judge stated that he applied all factors in aggravation and mitigation in imposing the sentence. See 730 ILCS 5/5—5—3.2(a)(3), (a)(7), (a)(8) (West 2000). Accordingly, we determine that no undue weight was placed on an improper factor and defendant was not prejudiced thereby.

In conclusion, defendant's convictions and concurrent sentences of five years each for residential burglary, aggravated battery, and armed violence are vacated. Defendant's convictions and sentences of 10 years for home invasion and 15 years for armed robbery, to be served consecutively, are affirmed. The judgment of the circuit court of Lee County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

BOWMAN and CALLUM, JJ., concur.