# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Westmoreland, 2013 IL App (2d) 120082**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK J. WESTMORELAND, JR., Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0082 |
| Filed | September 24, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for armed violence based on beating a child with a belt was reversed on the ground that the belt was not a category III dangerous weapon, and the cause was remanded for sentencing on defendant's merged conviction for aggravated battery of a child. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 11-CF-218; the Hon. Blanche Hill Fawell, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

| Counsel on Appeal | Thomas A. Lilien and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Edward R. Psenicka, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion. Justices Schostok and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1   Defendant, Frank J. Westmoreland, Jr., appeals his conviction of armed violence (720 ILCS 5/33A-2(a) (West 2010)) in connection with the January 17, 2011, beating of a child with a belt. He contends that the evidence was insufficient to support his armed violence conviction because the belt was not a category III dangerous weapon under section 33A-1(c)(3) of the Criminal Code of 1961 (the Code) (720 ILCS 5/33A-1(c)(3) (West 2010)). He also contends that a misdemeanor that was enhanced to a felony for sentencing purposes was improperly used as the predicate felony for the armed violence conviction and that his counsel was ineffective for failing to impeach the victim's mother with a time card showing that she was not at work on the day of the offense. We agree that, under the circumstances of this case, the belt was not a category III dangerous weapon. Accordingly, we reverse the armed violence conviction without addressing whether a misdemeanor that was enhanced to a felony can serve as the predicate felony for that offense. However, we hold that counsel was not ineffective. Thus, we remand for sentencing on a merged conviction of aggravated battery of a child (720 ILCS 5/12-4.3(a-5) (West 2010)) and otherwise affirm.

¶ 2                                       I. BACKGROUND

¶ 3   On February 24, 2011, defendant was indicted on multiple counts, including armed violence and multiple counts of aggravated battery of a child. The armed violence count alleged that defendant, while committing domestic battery, beat a household member, E.R., with a belt, causing bodily harm. The belt was alleged to be a category III dangerous weapon under section 33A-1(c)(3). The charge further alleged that defendant had previously been convicted of aggravated battery of a child, which would enhance the domestic battery alleged in the indictment from a misdemeanor to a Class 4 felony. 720 ILCS 5/12-3.2(b) (West 2010). Defendant had actually pleaded guilty to a reduced charge of aggravated battery, but that too would serve to enhance the domestic battery to a Class 4 felony. *Id.* On July 19,

2011, the trial court conducted a bench trial.

¶ 4        Evidence at trial showed that, on January 31, 2011, officers responded to a call reporting that a child, E.R., was being whipped or beaten in an apartment. When officers arrived, E.R.'s sister, S.R., urged E.R. to come out of the apartment. E.R. indicated that he had been hit with a belt by defendant. E.R. went to the hospital to be treated, and defendant, who lived at the apartment and babysat E.R., was arrested. Physicians who treated E.R. testified about his injuries, his treatment, and statements he made to them about being hit with a belt.

¶ 5        E.R. testified that, on one day, defendant hit him hard four times with a belt and he went to the hospital. E.R. also testified about another day when he was home, his sister did not have school, and his mother was at work. He said that, on that day, defendant hit him really hard three or more times with a belt. S.R. testified that she did not have school that day because it was Martin Luther King, Jr., Day (January 17, 2011). She said that, while her mother was at work, she saw defendant hit E.R. a lot of times with a belt. E.R.'s mother, L.R., also testified that S.R. did not have school that day. L.R. said that she was at work that day. A studded belt was found at the apartment, hanging inside of a bedroom closet. A letter defendant wrote to his aunt was admitted into evidence. That letter stated in part: "Sents [*sic*] when was it illegal to give a child a whipping with a belt?" The parties stipulated that defendant had previously been convicted of aggravated battery.

¶ 6        At the end of the State's case, defendant argued that the State failed to prove him guilty of armed violence beyond a reasonable doubt because a belt was not a category III dangerous weapon under section 33A-1(c)(3) of the Code. He did not argue that a misdemeanor domestic battery that has been enhanced to a felony for sentencing purposes could not be "any felony" under section 33A-2(a) of the Code (720 ILCS 5/33A-2(a) (West 2010)).

¶ 7        Defendant testified that, on January 31, 2011, E.R. had been provoking the family dog and defendant told E.R. to quit hurting the dog. Defendant said that E.R. laughed at him and that defendant took his belt off, grabbed E.R.'s arm, and hit him four or five times. However, he denied using the belt to hit E.R. Defendant said that he also made E.R. stand in a corner. He then left the apartment to get S.R. from the school bus stop. Defendant denied striking E.R. on Martin Luther King, Jr., Day and testified that he, the children, and their mother were all home together on that day.

¶ 8        As to the January 17 incident, the trial court found defendant guilty of armed violence and aggravated battery of a child, merging the latter conviction. Defendant was sentenced to seven years' imprisonment for the armed violence conviction.

¶ 9        Defendant moved for a new trial, alleging ineffective assistance of counsel based on his counsel's failure to impeach L.R. with a time card from her place of employment showing that she was not at work on Martin Luther King, Jr., Day. Defendant's counsel admitted that he received the time card in discovery before trial and that his failure to use it to impeach L.R. was an oversight. The court denied the motion, finding that, even if L.R. was not at work on Martin Luther King, Jr., Day, all of the witnesses agreed that she was not present in the apartment. The court added that impeachment on the point would not have affected its ruling. Defendant timely appealed.

¶ 10                                    II. ANALYSIS

¶ 11                    A. Use of a Belt as a Category III Dangerous Weapon

¶ 12     Defendant contends that the armed violence conviction must be reversed because a belt is not a category III dangerous weapon. Defendant concedes that, if the armed violence conviction is reversed, we should remand for him to be sentenced on the conviction of aggravated battery of a child that was merged into the armed violence conviction.

¶ 13     The armed violence statute provides: "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law ***." 720 ILCS 5/33A-2(a) (West 2010). Thus, the two essential elements of armed violence are being armed with a dangerous weapon and committing a felony. *People v. Alejos*, 97 Ill. 2d 502, 506 (1983).

¶ 14     Under section 33A-1(c)(1) of the Code, a person is considered armed with a dangerous weapon when he or she carries on or about his or her person or is otherwise armed with a category I, category II, or category III weapon. 720 ILCS 5/33A-1(c)(1) (West 2010). In charging defendant with a Class 2 felony, the State classified the belt as a category III weapon. See 720 ILCS 5/33A-3(b) (West 2010). A category III weapon is defined as "a bludgeon, black-jack, slungshot, sand-bag, sand-club, metal knuckles, billy, or other dangerous weapon of like character." 720 ILCS 5/33A-1(c)(3) (West 2010). "Because the interpretation of the armed violence statute presents a question of law, our review is *de novo*." *People v. Vue*, 353 Ill. App. 3d 774, 777 (2004) (citing *People v. Davis*, 199 Ill. 2d 130, 135 (2002)).

¶ 15     "Our purpose when construing a statute is to ascertain and give effect to the intent of the legislature." *Davis*, 199 Ill. 2d at 135. "Courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it." *Id.* "The most reliable indicator of legislative intent is the language of the statute, which, if plain and unambiguous, must be read without exception, limitation, or other condition." *Id.* "Moreover, criminal or penal statutes are to be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute." *Id.*

¶ 16     Under the doctrine of *ejusdem generis*, when a statutory clause specifically describes several classes of persons or things and then includes "other" persons or things, the word "other" is interpreted as meaning "other such like." *Id.* at 138. "The fundamental principle of statutory construction known as the last antecedent doctrine provides that relative or qualifying words or phrases in a statute serve only to modify words or phrases which are immediately preceding. They do not modify those which are more remote." *Id.*

¶ 17     In *Davis*, our supreme court, applying the above principles of statutory construction, held that a pellet/BB gun was not a dangerous weapon within the meaning of the 1992 armed violence statute. At that time, the statute had two categories of weapons, which defined a category I weapon as "a pistol, revolver, rifle, shotgun, spring gun, or any other firearm, sawed-off shotgun, a stun gun or taser ***, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, or any other deadly or dangerous weapon or instrument of like character." 720 ILCS 5/33A-1(b) (West 1992). A category II weapon was

defined as "a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character." 720 ILCS 5/33A-1(c) (West 1992).

¶ 18 The *Davis* court noted that pellet/BB guns were not specifically included in the detailed list of firearms. Thus, the court concluded that it was reasonable to assume that the legislature did not view pellet/BB guns as "firearms" and, consequently, did not intend those devices to be included under the clause "any other firearm" in the armed violence provision. *Davis*, 199 Ill. 2d at 136-37. Applying the doctrine of *ejusdem generis* and the last-antecedent rule, the court also determined that pellet/BB guns did not fit within the clause "any other deadly or dangerous weapon or instrument of like nature." The court observed that that clause came at the end of the list of blade-type weapons and was intended to refer only to weapons "like" the blade-type weapons that immediately preceded it, *i.e.*, weapons or instruments that are sharp and able to cut or stab. The court believed that the clause was not intended to modify all of the named weapons and therefore was not intended to include pellet/BB guns or any other weapons that are not firearms but are of like nature. *Id.* at 139. The court further noted that, even if there were some ambiguity in the statute, it would be required to interpret it in a lenient manner. *Id.* at 140.

¶ 19 For the same reasons, the *Davis* court also held that a pellet/BB gun was not "a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character." 720 ILCS 5/33A-1(c) (West 1992). The court stated:

"Again, pellet and BB guns are not specifically named in this listing. Furthermore, although a metal pellet/BB pistol might be capable of being used as a bludgeon, it is not typically identified as such and, under the doctrine of *ejusdem generis*, cannot be interpreted to be 'of like character' to the bludgeon-type weapons included in the category II listing." *Davis*, 199 Ill. 2d at 141.

¶ 20 In *Vue*, we applied *Davis* and held that a metal flashlight was not a category III dangerous weapon. In doing so, we specifically rejected the State's argument that, while a flashlight's principal purpose was not to bludgeon, it had a similar shape and could readily be used as a bludgeon-type weapon. *Vue*, 353 Ill. App. 3d at 780.

¶ 21 We began by noting that the word "bludgeon" was not defined by the statute. "Dictionaries generally describe a bludgeon as being a short stick used as a weapon usually having one thick, heavy, or loaded end." *Id.* (citing Webster's Third New International Dictionary 240 (1993), and *People v. Fink*, 94 Ill. App. 3d 816, 817 (1981)). We then observed that section 33A-1(c)(3) directed that the item must be a " 'dangerous *weapon* of like character.' " (Emphasis in original.) *Id.* (quoting 720 ILCS 5/33A-1(c)(3) (West 2000)). In particular, we stated:

"It does not state that an item qualifies as a bludgeon if it shares physical characteristics with a bludgeon and is used in a bludgeon-like manner to harm the victim. Otherwise, the *Davis* court would have found the pellet/BB gun to be a bludgeon within the meaning of the statute. We believe that the legislature intended that the item used in category III under the armed violence statute be an inherently dangerous weapon. Although a metal flashlight shares physical characteristics with a bludgeon and may be capable of being used as a bludgeon, it is not commonly identified as a dangerous weapon or commonly

-5-

used as one and, under the doctrine of *ejusdem generis*, cannot be interpreted under the statute to be 'of like character' to the bludgeon-type *weapons* included in the category III listing. Moreover, contrary to the State's argument, common sense dictates that a broken beer bottle or a shard of glass is similar to a blade-type weapon because it has no legitimate use other than as a dangerous weapon. On the other hand, a flashlight is not inherently a dangerous weapon and has a legitimate use. As such, it should not be considered a dangerous weapon for purposes of the armed violence statute." (Emphasis in original.) *Id.* at 780-81.

¶ 22     Finally, we noted that there was no evidence that defendant had modified the flashlight to make it more "bludgeon-like" so that it could be used as a weapon. *Id.* at 781. Accordingly, we found that the flashlight was not a category III dangerous weapon and we vacated the defendant's armed violence conviction.

¶ 23     *Vue* applies here. Just like the flashlight in *Vue*, a belt is not normally used as a dangerous weapon of a bludgeon-like character, nor is it inherently a dangerous weapon. Although it may be capable of being used as a bludgeon, it is not commonly identified as a weapon. Further, in this case, the State presented no evidence that the belt was altered to make it more bludgeon-like or for specific use as a weapon. See *id.* Instead, the evidence was that, although the belt had metal studs, it was simply an article of clothing. Thus, in this particular case, the belt was not a category III dangerous weapon.

¶ 24     The State argues that *Vue* was wrongly decided, asserting that it was improper to fail to consider how the object was used. But *Vue* applied well-settled principles of statutory construction and adopted the analysis from *Davis*, which held that, while an object might be used as a bludgeon, it must typically be identified as such to be interpreted as "of like character" to the bludgeon-type weapons included in the category III listing. The State also points to a pre-*Davis* case from the Third District, which held, without statutory interpretation, that the evidence was sufficient to support a conviction based on the use of a cane as a dangerous weapon. *People v. Lee*, 46 Ill. App. 3d 343, 348 (1977). The State also cites a First District case that noted that a baseball bat was a dangerous weapon when that determination was not at issue. *People v. Dunlap*, 315 Ill. App. 3d 1017, 1032 (2000). We do not find those cases persuasive as reasons to depart from the precedent set in *Vue*. Accordingly, we reverse the armed violence conviction and remand for sentencing on the merged conviction of aggravated battery of a child.

¶ 25                              B. Ineffective Assistance of Counsel

¶ 26     Defendant next alleges, however, that he is entitled to a new trial because his trial counsel was ineffective for failing to impeach L.R. with the time card showing that she was not at work on Martin Luther King, Jr., Day.

¶ 27     A claim of ineffective assistance of counsel requires a defendant to establish that (1) his attorney's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A reasonable probability means a probability sufficient to undermine confidence in

the outcome." *People v. Rosemond*, 339 Ill. App. 3d 51, 66 (2003). "The issue of whether a defendant has received ineffective assistance of counsel is a mixed question of fact and law." *People v. Sharifpour*, 402 Ill. App. 3d 100, 116 (2010). "We defer to the trial court's factual findings but review *de novo* whether counsel's omission supports an ineffective-assistance claim." *Id.*

¶ 28　　Here, even if L.R. was not at work that day, the point at issue was whether she was at home, and all the witnesses against defendant agreed that she was not. Whether L.R. was at work or was otherwise away was tangential. See *People v. Guerrero*, 2011 IL App (2d) 090972, ¶¶ 40, 87 (affirming trial court's finding that the fact that victim's stepmother "was away someplace other than work" was tangential and did not render victim's report of sexual abuse incredible). Accordingly, the trial court specifically found that impeachment with the time card would not have mattered. We cannot say that there is a reasonable probability that the outcome would have been different, and counsel thus was not ineffective.

¶ 29　　　　　　　　　　　　　III. CONCLUSION

¶ 30　　Under the circumstances of this case, the belt was not a category III dangerous weapon. As a result, we reverse the armed violence conviction and remand for sentencing on the merged conviction of aggravated battery of a child. Defendant's counsel was not ineffective. Thus, we otherwise affirm the judgment of the circuit court of Du Page County.

¶ 31　　Affirmed in part and reversed in part; cause remanded.