# Illinois Official Reports

## Supreme Court

---

### *People v. Hernandez*, 2016 IL 118672

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GREGORY HERNANDEZ, a/k/a Israel Ramos, Appellee. |
| Docket No. | 118672 |
| Filed | May 19, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County; the Hon. Daniel P. Guerin, Judge, presiding. |
| Judgment | Circuit court judgment reversed. Cause remanded with directions |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Garson S. Fischer, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| | Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Paul Alexander Rogers, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellee. |
| Justices | JUSTICE KARMEIER delivered the judgment of the court, with opinion. Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion. |

¶ 1        Defendant, Gregory Hernandez, was found guilty following a Du Page County bench trial of several charges, including armed robbery, a Class X felony under section 18-2 of the Criminal Code of 1961 (Code) (720 ILCS 5/18-2 (West 1998)). Defendant was eventually sentenced, as pertinent here, to an extended term of 40 years' imprisonment for armed robbery. Defendant filed an amended petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 (West 2012)). Following a 2014 evidentiary hearing on his postconviction claim that the 40-year term imposed for armed robbery violated the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11), the circuit court granted defendant a new sentencing hearing. The court's order stated the armed robbery statute used to sentence defendant was "facially unconstitutional" because it carried a harsher penalty than the penalty for "armed violence with a Category III weapon (bludgeon) 720 ILCS 5/33A-1 (1998)."[1] The State filed a direct appeal to this court, citing the circuit court's judgment declaring an Illinois statute unconstitutional. Therefore, we have jurisdiction pursuant to article VI of the Illinois Supreme Court Rules, "Appeals in Criminal Cases, Post-Conviction Cases, and Juvenile Court Proceedings," Rule 603, which states that appeals in cases "in which a statute of *** this State has been held invalid shall lie directly to the Supreme Court as a matter of right." Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); see also Ill. S. Ct. R. 302(a) (eff. Oct. 4, 2011). For the reasons that follow, we reverse the judgment of the circuit court and affirm defendant's 40-year term of imprisonment for armed robbery.

¶ 2                                    BACKGROUND

¶ 3        In January 1999, defendant was indicted for various offenses arising out of an incident in which he allegedly entered a residence, inflicted bodily harm on its occupants, Gus and Eunice Pakosta, and took certain property. The indictment included counts for, *inter alia*, home invasion, armed robbery, and armed violence. All four armed robbery counts alleged that defendant had committed the offense of armed robbery "while armed with a dangerous weapon, a bludgeon," citing "720 ILCS 5/18-2(a)." Similarly, all three armed violence counts alleged that defendant committed an underlying felony, other than armed robbery, "while armed with a dangerous weapon, a bludgeon," citing "720 ILCS 5/33A-2." Prior to trial, the

---

[1]As noted by defendant in his brief before this court, the offenses in this case occurred in 1998, and the circuit court and both parties below cited the 1998 version of the armed violence statute. However, this citation is technically incorrect, as the 1998 armed violence statute included amendments from the "Safe Neighborhoods Act" (SNA), Public Act 88-680, which this court held to be unconstitutional in *People v. Cervantes*, 189 Ill. 2d 80 (1999). Therefore, it is the 1994 version of the armed violence statute that applies here, under which bludgeons and certain like weapons were defined as Category II weapons. See *People v. Gersch*, 135 Ill. 2d 384, 390 (1990) (enacting an unconstitutional amendment to a statute leaves the law in force as it was before the unconstitutional amendment). But because the SNA did not change the sentencing provision for committing armed violence with a bludgeon or certain like weapons, instead merely redefining those weapons as Category III weapons, defendant concedes there is no practical difference between the 1994 and 1998 statutes for our purposes, as the sentencing ranges were unchanged. Thus, to maintain consistency and avoid confusion, we follow the parties herein and the circuit court in citing to the 1998 version of the armed violence statute and in describing bludgeons and certain like weapons as "Category III" weapons.

State entered a *nolle prosequi* on each of the armed violence counts, as well as two of the four armed robbery counts.

¶ 4    A bench trial was held on the remaining counts. Relevant to the issue presented in this court, the Pakostas, an elderly married couple, testified that defendant entered their home in the early morning hours of December 7, 1998, that he struck each of them in the head with a metal tool, and that he forced Eunice to open a safe, from which he took money and jewelry before fleeing the scene. According to the Pakostas, the metal tool the defendant used during the incident belonged to them and had been stored in their basement. That specific tool was never recovered. Gus described the tool as a pair of "big shears." Eunice described the tool as a pair of tin snips, which she stated was "very heavy" and "very big" and identified a demonstrative exhibit as a pair of tin snips that was "almost exactly" identical to the tin snips defendant had used. The trial court found defendant guilty on numerous counts, including the two remaining armed robbery counts, but did not expressly find whether defendant had been armed with a "bludgeon."

¶ 5    Defendant was sentenced to an aggregate consecutive term of 90 years' imprisonment. On direct appeal, the appellate court vacated several convictions, leaving one home invasion conviction and one armed robbery conviction, and remanded the cause for a new sentencing hearing. *People v. Hernandez*, No. 2-02-0717 (2004) (unpublished order under Supreme Court Rule 23). On remand, the trial court sentenced defendant to an aggregate term of 80 years' imprisonment, consisting of a 40-year term for home invasion involving Gus and a consecutive 40-year term for armed robbery involving Eunice.

¶ 6    Defendant filed a *pro se* postconviction petition while his appeal from the conviction was pending. The trial court appointed counsel for defendant. Postconviction proceedings were stayed until the appeal process had concluded and resumed in February 2012. In September 2013, defendant was allowed to file a new *pro se* postconviction petition. An amended petition, incorporating the claims raised in the *pro se* petition, was filed by appointed counsel in June 2014. In September 2014, the trial court, following a hearing, granted the State's motion to dismiss all of defendant's postconviction claims except for his claim that his 40-year, extended-term, Class X sentence imposed on remand for armed robbery violated the proportionate penalties clause because it had the same elements as the lesser Class 2 offense of armed violence with a Category III weapon.

¶ 7    Following a third-stage hearing in October 2014, the trial court entered an order on December 3, 2014, granting defendant a new sentencing hearing as relief on the proportionate penalties claim of his amended postconviction petition. The court's order further stated: "The sentencing scheme for armed robbery set forth in 720 ILCS 5/18-2(b) (1998) is facially unconstitutional as it provides disproportionate penalties to armed violence with a Category III weapon (bludgeon) 720 ILCS 5/33A-1 (1998)." A timely direct appeal by the State followed.

¶ 8                                   ANALYSIS

¶ 9    Article I, section 11, of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "In analyzing a proportionate penalties challenge, our ultimate inquiry is whether the legislature has set the sentence in accord with the seriousness of the offense." *People v. Guevara*, 216 Ill. 2d 533, 543 (2005); see

also *People v. Lombardi*, 184 Ill. 2d 462, 473-74 (1998). In cases such as this one, where defendant argues his sentence violates the proportionate penalties clause because it is greater than the sentence for an offense with identical elements, this court has repeatedly observed that, " '[i]f the legislature determines that the exact same elements merit two different penalties, then one of these penalties has not been set in accordance with the seriousness of the offense.' " *People v. Clemons*, 2012 IL 107821, ¶ 30 (quoting *People v. Sharpe*, 216 Ill. 2d 481, 522 (2005)); see also *People v. Ligon*, 2016 IL 118023, ¶ 11.

¶ 10    Further, as recently stated by this court in *Ligon*:

"An expectation of identical penalties for identical offenses comports with 'common sense and sound logic' (*People v. Christy*, 139 Ill. 2d 172, 181 (1990)) and also gives effect to the plain language of the Illinois Constitution (*Clemons*, 2012 IL 107821, ¶ 30). Thus, where identical offenses do not yield identical penalties, this court has held that the penalties were unconstitutionally disproportionate and the greater penalty could not stand. *Sharpe*, 216 Ill. 2d at 504 (citing *Christy*, 139 Ill. 2d at 181). As the constitutionality of a statute is purely a matter of law, we review the question *de novo*. *People v. Hauschild*, 226 Ill. 2d 63, 83 (2007); *Sharpe*, 216 Ill. 2d at 486-87. However, we begin with the presumption that the statute is constitutional and that, if reasonably possible, this court must construe the statute so as to affirm its constitutionality and validity. *In re D.W.*, 214 Ill. 2d 289, 310 (2005)." *Ligon*, 2016 IL 118023, ¶ 11.

¶ 11    Given these principles, we find that our decision in *Ligon* is dispositive of the main issue presented in this case, *i.e.*, whether the Class X sentence for armed robbery which defendant received on remand from his direct appeal violated the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11). In *Ligon*, we agreed with the State's contention that the lower court erred in finding a violation of the proportionate penalties clause where the elements of aggravated vehicular hijacking with a dangerous weapon, other than a firearm (AVH/DW), a Class X felony, were *not* identical to the elements of armed violence with a Category III weapon. 2016 IL 118023, ¶¶ 10, 20. The holding in *Ligon* was based on this court's conclusion that:

"[M]any objects, including the BB gun defendant possessed in this case, satisfy the 'dangerous weapon' element of AVH/DW, but not the 'Category III weapon' element of armed violence with a category III dangerous weapon. See *People v. Davis*, 199 Ill. 2d 130, 141 (2002) (holding a BB/pellet gun did not qualify as a 'bludgeon' under the armed violence statute); see also *People v. Myers*, 101 Ill. App. 3d 1073, 1075 (1981) (holding that 'what constitutes a dangerous weapon for armed robbery does not necessarily constitute a dangerous weapon under the armed violence statute, wherein categories of dangerous weapons are specified')." *Ligon*, 2016 IL 118023, ¶ 20.

¶ 12    "Dangerous weapon" is not defined in either the armed robbery statute at issue here, or the AVH/DW statute at issue in *Ligon*, but is derived from common law. *Id.* ¶ 21. "As this court concluded in *People v. Skelton*, 83 Ill. 2d 58, 66 (1980), what constitutes a dangerous weapon is a question of fact and includes any object sufficiently susceptible to use in a manner likely to cause serious injury." *Id.* Therefore, the definition of dangerous weapon for purposes of the armed robbery statute includes not only objects that are *per se* dangerous, but objects that are used or may be used in a dangerous manner. See *People v. Ross*, 229 Ill. 2d 255, 275 (2008). Here, the dangerous weapon defendant was armed with during the commission of the armed

robbery of Eunice Pakosta, a pair of tin snips, fits into the latter category. See *Ligon*, 2016 IL 118023, ¶ 22.

¶ 13 In contrast, for purposes of the armed violence statute, a person is considered "armed with a dangerous weapon" when he or she "carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon." 720 ILCS 5/33A-1(a) (West 1998); see *Ligon*, 2016 IL 118023, ¶ 19. Category III weapons are defined as "a bludgeon, black-jack, slungshot, sand-bag, sand club, metal knuckles, billy, or other dangerous weapon of like character." 720 ILCS 5/33A-1(c) (West 1998); see *Ligon*, 2016 IL 118023, ¶ 19. Thus, Category III dangerous weapons for purposes of the armed violence statute are defined by the statute and are therefore limited to the weapons identified by the statute. *Id.* ¶ 23 (citing 720 ILCS 5/33A-1(c) (West 2000)).

¶ 14 Accordingly, this court in *Ligon* (*id.* ¶¶ 23-24), relying upon *Davis*, 199 Ill. 2d 130, held that a BB gun or pellet gun was *not* a bludgeon or other dangerous weapon of like character under the armed violence statute, where those objects were not specifically named in the armed violence statute. "Furthermore, although a metal pellet/BB pistol might be capable of being used as a bludgeon, it is not typically identified as such and, under the doctrine of *ejusdem generis*, cannot be interpreted to be 'of like character' to the bludgeon-type weapons included in the category [III] listing." *Davis*, 199 Ill. 2d at 141; *Ligon*, 2016 IL 118023, ¶ 23 n.4. Therefore, as in *Ligon* and *Davis*, the tin snips with which defendant herein was armed *cannot* be considered a bludgeon "or other dangerous weapon of like character" under the armed violence statute.

¶ 15 However, the tin snips defendant used *do* qualify as a dangerous weapon under the common-law definition applicable to the statutory offense of armed robbery, as they are essentially a craftsman's tool (*Carlson v. Moline Board of Education, School District No. 40, Moline*, 124 Ill. App. 3d 967, 973 (1984) (tin snips are a workman's tool used to cut building materials), *abrogated on other grounds by Meyer v. Caterpillar Tractor Co.*, 135 Ill. 2d 1, 12 (1990)) but are often heavy and large enough that when used in the manner they were in this case, to strike a victim, they become dangerous. See *Ligon*, 2016 IL 118023, ¶ 24 (metal BB gun used to threaten and strike victim was a dangerous weapon within the meaning of the offense of armed robbery (citing *People v. Johnson*, 323 Ill. App. 3d 284 (2001))). Further, in *People v. Vue*, 353 Ill. App. 3d 774, 775-76, 783 (2004), the appellate court affirmed the defendant's armed robbery conviction where, similar to the facts herein, the defendant entered a residence, struck the victim in the head with a heavy metal object, a flashlight, and caused serious injuries before taking valuable belongings and fleeing. Although no proportionate penalties claim was made in *Vue*, the panel, citing *Davis*, did find that the defendant's armed violence conviction should be vacated, holding the metal flashlight was not a "dangerous weapon" within the meaning of the armed violence statute as, notwithstanding shared characteristics with a bludgeon and that it was used like a bludgeon, the flashlight was not "of like character" to a bludgeon, where it was not inherently dangerous and had a legitimate use. *Id.* at 779-81.

¶ 16 As these cases reflect and as earlier stated, the definition of dangerous weapon for purposes of the armed robbery statute includes not only objects that are *per se* dangerous, but objects that are used or may be used in a dangerous manner. See *Ross*, 229 Ill. 2d at 275. It is clear then that the common-law definition of "dangerous weapon" found in the armed robbery statute is

broader than the definition of "dangerous weapon" in the armed violence statute. See *Ligon*, 2016 IL 118023, ¶ 27. Thus, contrary to the postconviction court's finding below, the elements of armed robbery, which require, *inter alia*, proof that defendant was "armed with a dangerous weapon" in violation of 720 ILCS 5/18-2(a) (West 1998), *are not* identical to the elements of armed violence, which require, *inter alia*, proof that defendant committed a qualifying felony while armed with a Category III weapon in violation of 720 ILCS 5/33A-1, 33A-2 (West 1998). See *Ligon*, 2016 IL 118023, ¶ 25. Consequently, we hold that the lower court erred in concluding that a violation of the proportionate penalties clause under the identical elements test occurred in this case. *Id.*

¶ 17 However, defendant argues before this court that the State is judicially estopped from asserting that, as charged herein, section 18-2 of the armed robbery statute and section 33A-2 of the armed violence statute do not have identical elements. Contrary to defendant's claim, our decision in *Seymour v. Collins*, 2015 IL 118432, does not support a finding of judicial estoppel.

¶ 18 In *Seymour*, this court stated:

"Judicial estoppel is an equitable doctrine invoked by the court at its discretion. [Citations.] As the Supreme Court has observed, the uniformly recognized purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from 'deliberately changing positions' according to the exigencies of the moment. [Citation.] Judicial estoppel applies in a judicial proceeding when litigants take a position, benefit from that position, and then seek to take a contrary position in a later proceeding. [Citation.]" *Id.* ¶ 36.

While this court has identified five prerequisites as "generally required" before a court may invoke the doctrine of judicial estoppel (*id.* ¶ 37), the core concern in establishing judicial estoppel is "that a party takes *factually* inconsistent positions, in separate proceedings, intending that the trier of fact accept the truth of the facts alleged." (Emphasis added.) *Id.* ¶ 38. Here, although the position taken by the State at trial was clearly factual, its position before the court in postconviction proceedings was one of *law*.

¶ 19 This case began with the State securing an indictment for violating, *inter alia*, section 18-2(a) of the armed robbery statute, "in that the said defendant while armed with a dangerous weapon, a bludgeon, knowingly took property *** from the presence of Eunice Pakosta, by the use of force." Defendant argues that where the State adopted the factual position at trial that defendant used "a bludgeon," it is estopped from arguing that this object was anything else. However, any object, including tin snips, may be considered a common-law "dangerous weapon" if it can be used in a dangerous manner, for example, as a bludgeon.

¶ 20 Thus, at trial, in order to prove the offense of armed robbery, the State needed only to establish *the fact* that defendant committed a robbery while "armed with a dangerous weapon." 720 ILCS 5/18-2(a) (West 1998); see also *People v. Skelton*, 83 Ill. 2d 58, 66 (1980) (for purposes of armed robbery statute, many objects, including guns, can be dangerous and cause serious injury, even when used in a fashion for which they were not intended). Here, as we have established, the State did not argue at trial that the tin snips used herein were a dangerous weapon, *per se*, but instead presented evidence that the tin snips were "actually used in a

- 6 -

dangerous manner." [2] See *People v. Thorne*, 352 Ill. App. 3d 1062, 1070-71 (2004). Accordingly, the question of whether the tin snips herein could be used as a "dangerous weapon" to establish armed robbery under section 18-2(a) was a question for the trier of fact, and the trial court accepted the truth of this fact in convicting defendant of this charge.

¶ 21   Yet, unlike this *factual* position taken at trial, the State argued, in response to defendant's later postconviction identical elements claim, that his Class X sentence imposed for armed robbery with "a dangerous weapon, a bludgeon," did not violate the proportionate penalties clause because the tin snips at issue did not satisfy the "dangerous weapon" element of the Class 2 offense of armed violence. "The issue of whether a sentencing provision violates the proportionate penalties clause is a matter of law ***." *People v. Span*, 2011 IL App (1st) 083037, ¶ 96; see also *Davis*, 199 Ill. 2d at 141 (noting a pellet gun could be "used as a bludgeon" even as it held, as a matter of law, that a pellet gun was not a bludgeon). Indeed, defendant has conceded as much in his brief before this court, noting that whether he was armed with a Category III "dangerous weapon" is a "legal opinion."

¶ 22   We therefore conclude that the core prerequisite for invoking judicial estoppel, *i.e.*, that the State took *factually* inconsistent positions in separate proceedings, did not exist here. See *Seymour*, 2015 IL 118432, ¶ 38. Because the proportionate penalties argument made by the State was one of law, rather than fact, the State was not equitably barred from taking that position in defendant's postconviction proceedings nor, for that matter, before this court. *Cf. Ligon*, 2016 IL 118023, ¶ 28 (a party may not " 'advance a theory or argument on appeal that is inconsistent with the position taken below' " (quoting *People v. Denson*, 2014 IL 116231, ¶ 17)).

¶ 23                                   CONCLUSION

¶ 24   We hold, based upon the foregoing, that the trial court erred in finding a proportionate penalties violation under the Illinois Constitution. Accordingly, the trial court also erred in granting defendant a new sentencing hearing as relief on the proportionate penalties claim of his amended postconviction petition. Therefore, the judgment of the circuit court is reversed, and the cause is remanded to that court with directions to reinstate defendant's 40-year sentence for the Class X felony of armed robbery (720 ILCS 5/18-2 (West 1998)).

¶ 25   Circuit court judgment reversed.

¶ 26   Cause remanded with directions.

---

[2]We note that while the State referred to the pair of tin snips as "a bludgeon" at times during trial, it never argued that the object with which defendant was armed was anything other than a pair of tin snips.